**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

RINAT AKHMETSHIN
1529 Vermont Avenue, N.W.
Washington, D.C. 20005,

                    Plaintiff,

    -against-

WILLIAM BROWDER,
United Kingdom,

                    Defendant.

Civil Action No.

**COMPLAINT**

**JURY TRIAL DEMANDED**

       Plaintiff Rinat Akhmetshin, by his undersigned attorneys, brings this Complaint against

William Browder and alleges as follows:

## NATURE OF THE ACTION

       1.     This is a case about a powerful financier who struck an intentionally false and

injurious low blow against a rival in a public debate about corruption in Russia.

       2.     Defendant William Browder staked his reputation on allegations that Russian

officials committed a massive Russian tax fraud and murdered Sergei Magnitsky as part of an

attempted cover-up.

       3.     Browder's allegations led to the passage of the Sergei Magnitsky Rule of Law

Accountability Act of 2012, Pub. L. No. 112-208, 126 Stat 1496 (2012), on December 14, 2012.

       4.     In connection with his employment, Plaintiff Rinat Akhmetshin investigated

Browder's allegations.  He found evidence that led him to believe that they were misleading and

contradicted in material respects.

       5.     Subsequently, Akhmetshin was engaged to work on a lobbying effort designed to

educate the public about and to challenge Browder's allegations.

6.      Browder leveraged his substantial resources and access to public platforms to discredit Akhmetshin in retaliation against him for engaging in these legitimate lobbying efforts.

7.      As part of Browder's campaign to ruin Akhmetshin's reputation, Browder falsely claimed, among other things, that Akhmetshin is a foreign spy.

8.      Browder's intentionally false statements about Akhmetshin have severely tarnished Akhmetshin's professional reputation, undermined his ability to work as a consultant and lobbyist, and caused emotional and physiological damage.

## THE PARTIES

9.      Plaintiff Rinat Akhmetshin, a dual citizen of the United States and the Russian Federation, is a consultant and lobbyist.  He resides in Washington, D.C.

10.      Defendant William Browder is a British financier who founded Hermitage Capital Management, a hedge fund specializing in Russian markets.  Browder renounced his American citizenship in 1998 and is now a citizen of the United Kingdom.

## JURISDICTION AND VENUE

11.      The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(2) because Akhmetshin is a U.S. citizen residing in the District of Columbia, Browder is a citizen of the United Kingdom, and the amount in controversy exceeds $75,000.

12.      The Court has personal jurisdiction over Browder because Browder published in the District of Columbia and elsewhere false and defamatory statements concerning Akhmetshin, who resides in the District of Columbia, those statements were directed at the District of Columbia, and Browder does business and engages in persistent lobbying in the District of Columbia.

13.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to Akhmetshin's claim occurred in the District of Columbia, including the publication of the defamatory statements and the damage to Akhmetshin's reputation and ability to earn a living in his chosen profession.  Akhmetshin has been damaged in his business in this District.

## FACTUAL BACKGROUND

### *Akhmetshin's Strategic Communications Business*

14.     Akhmetshin holds a PhD in bioorganic chemistry from the Catholic University of America.  He is self-employed, and his small business provides strategic communication and consulting services.  He has worked for both governmental and private clients.

15.     For instance, in or about 2008 and 2009, Akhmetshin worked with the government of Kyrgyzstan and various U.S. agencies to facilitate the relocation of a U.S. military base within Kyrgyzstan.  He has also worked on matters relating to Russo-American efforts to combat the heroin trade in Afghanistan and has consulted in connection with private arbitration proceedings.

16.     Akhmetshin is fluent in Russian, has extensive experience in Eurasia, and has numerous contacts throughout that part of the world.  Akhmetshin is considered an expert on the legal, political, social, and economic characteristics of many of the countries that formerly comprised the Soviet Union.  Given his unique skill set, reputation, and contacts, Akhmetshin has been sought out primarily by American and Eurasian clients to offer strategic communications advice, and more recently lobbying services.

17.     It was this skill set and experience that formerly attracted a diverse client base and enabled Akhmetshin to run a profitable business.

*Browder's Foray into Russia*

18.     Browder moved to Russia following the collapse of the Soviet Union, and there founded Hermitage Capital Management ("Hermitage"), which became one of the largest hedge funds in Russia with over $4 billion in assets under management.

19.     In or about 2008, Russian authorities detained Sergei Magnitsky, who at the time was working as an auditor for Hermitage's law firm.

20.     Tragically, Magnitsky died in a Russian prison on or about November 16, 2009.

21.     Browder has publicly maintained that Russian prison guards killed Magnitsky because Magnitsky discovered that Russian government officials and members of organized crime had perpetrated a tax fraud scheme using the identities of several Hermitage portfolio companies (the "Hermitage Tax Refund Scheme").

*Browder Lobbies to Enact the Magnitsky Act*

22.     Following Magnitsky's death, Browder embarked on an extensive public relations and lobbying campaign to vindicate Magnitsky and to oppose those whom he alleged had contributed to Magnitsky's death in prison.

23.     As part of that campaign, upon information and belief, Browder engaged numerous lobbying and public relations firms in Washington D.C.; met with members of Congress and their staff, including Senators Benjamin Cardin and John McCain, in Washington, D.C.; and testified in congressional hearings to advance his narrative about Magnitsky and the Hermitage Tax Refund Scheme.

24.     Browder's lobbying efforts culminated in the passage of the Sergei Magnitsky Rule of Law Accountability Act of 2012, Pub. L. No. 112-208, 126 Stat 1496 (2012) (the "Magnitsky Act"), on December 14, 2012.

25.     The Magnitsky Act includes factual findings that largely match Browder's version of events:  that Magnitsky was investigated by the same officials whom he had accused of perpetrating the Hermitage Tax Refund Scheme, that he was beaten to death by eight prison guards, and that Magnitsky's death was met with impunity in Russia.  *See* Magnitsky Act § 402(a).

26.     The Magnitsky Act authorized the President to impose sanctions against individuals thought to have been responsible for Magnitsky's death, those who allegedly benefitted financially from his death, and those who were thought to have been involved in the underlying crimes that Magnitsky purportedly discovered.

27.     In retaliation for passage of the Magnitsky Act, Russia swiftly passed a law banning the adoption of Russian orphans by Americans.

***The Prevezon Case***

28.     On or about September 10, 2013, the U.S. Attorney's Office for the Southern District of New York commenced a civil forfeiture action against Prevezon Holdings Ltd. and related entities ("Prevezon"), alleging that Prevezon had laundered a portion of the purportedly ill-gotten gains from the Hermitage Tax Refund Scheme through certain New York real estate. *See United States v. Prevezon Holdings Ltd, et al.*, No. 13 Civ. 6326 (S.D.N.Y.) (the "Prevezon Case").

29.     Discovery in the Prevezon Case revealed that Browder had been a driving force behind that lawsuit, and that Browder made numerous documents available to the U.S. Attorney's Office for use in prosecuting the case.

30.     In August 2015, Baker & Hostetler LLP, which represented Prevezon, retained Akhmetshin as a consultant to help its attorneys review and analyze documents in connection with the Prevezon Case.

31.     During the course of Akhmetshin's work on the Prevezon Case, Akhmetshin reviewed numerous documents, including criminal filings against Browder and forensic reports prepared by Physicians for Human Rights (a non-governmental organization composed primarily of doctors who advocate neutrally on behalf of victims of human rights abuses) concerning Magnitsky's death.  These documents led Akhmetshin to question Browder's version of events concerning the Hermitage Tax Refund Scheme and Magnitsky's death.

***Akhmetshin's Legitimate Lobbying Work Related to the Magnitsky Act***

32.     Over time, Akhmetshin became increasingly convinced that the Magnitsky Act was founded upon falsehoods, and that Browder had engaged in a misleading lobbying campaign that had the tragic side-effect of halting American adoptions of Russian orphans.

33.     Akhmetshin proposed the idea for a lobbying campaign to educate the public and government officials about, among other things, Browder's version of these events.

34.     Akhmetshin's proposal culminated in the formation of the Human Rights Accountability Global Initiative ("HRAGI"), a lobbying organization with the goal of restarting Russian adoptions in America by, among other things, removing Sergei Magnitsky's name from the Magnitsky Act.

35.     Akhmetshin began working as a registered lobbyist for HRAGI in April 2016.

36.     As a lobbyist for HRAGI, Akhmetshin attended meetings with and distributed certain documents to members of Congress and their staffers.  The documents asserted that

Browder's story concerning the Hermitage Tax Refund Scheme and Magnitsky's death were false, and that Browder had committed tax fraud with Magnitsky's assistance.

37.     Additionally, Akhmetshin organized a screening of a documentary entitled *The Magnitsky Act. Behind the Scenes* at the Newseum in Washington, D.C. on June 13, 2016.  The documentary questioned the accuracy of the Magnitsky Act's factual findings.

***Browder Goes on the Attack***

38.     As the leading advocate for the Magnitsky Act, Browder became aware of Akhmetshin's lobbying efforts and embarked on a campaign to undermine Akhmetshin.

39.     As part of that campaign, on or about July 15, 2016, upon information and belief Browder caused Hermitage to submit a letter to the Department of Justice regarding HRAGI's lobbying efforts (the "Hermitage Letter"), alleging that Akhmetshin and others had violated the Foreign Agent Registration Act.

40.     The Hermitage Letter focused on Akhmetshin's legitimate lobbying efforts and specifically identified lobbying and consultancy work performed by Akhmetshin, including Akhmetshin's former work on behalf of Andrey Vavilov and Akhmetshin's role as a consultant in a legal dispute involving International Mineral Resources B.V. and Eurochem Volga-Kaliy LLC.

41.     The Hermitage Letter further reported that Akhmetshin had been involved in organizing an attempted screening of *The Magnitsky Act. Behind the Scenes* in the European Parliament.  It also reported that Akhmetshin had attended a hearing before the House Foreign Affairs Committee on June 14, 2016.

42.     Upon information and belief, the Department of Justice never took any action in response to Hermitage's baseless allegations.

43.     Having identified Akhmetshin as a rival and a threat to his lobbying efforts, upon information and belief, Browder then defamed Akhmetshin by falsely stating to reporters and others that Akhmetshin is a Russian spy.

44.     Before Browder broadcasted his false narrative about Akhmetshin to media outlets in Washington, D.C., Akhmetshin's name had hardly ever appeared in any media reports.

***The Defamatory Statements***

45.     On July 14, 2017, it was widely reported that, the previous year, Akhmetshin and others had attended a meeting with Donald Trump, Jr. at Trump Tower on June 9, 2016.

46.     Akhmetshin did not (and has never) represented the Russian government or any Russian government official at the Trump Tower meeting.

47.     Immediately after the news of Akhmetshin's attendance at the Trump Tower meeting broke, Browder seized upon the opportunity to smear Akhmetshin's name.

48.     On July 14, 2017, at 5:00 a.m., Browder posted on Twitter:  "Huge development in the Veselnitskaya/Trump Jr story.  Russian GRU officer Rinat Akhmetshin was also present."  Browder's posting, including the unqualified statement that Akhmetshin was a "Russian GRU officer," was presented as a statement of fact.

49.     Less than two hours later, on July 14, 2017, at 6:51 a.m., Browder posted on Twitter:  "Russian intelligence asset Rinat Akhmetshin confirms he was in the meeting with Trump Jr."  Browder's posting, including the unqualified statement that Akhmetshin was a "Russian intelligence asset," was presented as a statement of fact.

50.     In an article published in *Business Insider* on July 14, 2017, at 8:31 a.m., Browder was quoted as stating:  "So in my opinion you had a member of Putin's secret police directly meeting with the son of the future next president of the United States asking to change US

sanctions policy crucial to Putin."  Browder intended his statement to be interpreted as a statement of fact that Akhmetshin was "a member of Putin's secret police."  Given Browder's reputation as an expert on Russian matters, reasonable readers would have perceived this statement as one of fact.

51.     Four days later, on July 18, 2017, Browder appeared on *CBS This Morning* to discuss the Trump Tower meeting.  Concerning Akhmetshin, Browder stated:  "[Natalia Veselnitskaya] then hires this guy Rinat Akhmetshin, who is a – by all accounts, some kind of shady former Soviet spy, current spy operator in Washington."  Browder intended this statement to be a statement of fact.

52.     Browder's statements concerning Akhmetshin are false and defamatory.

53.     Akhmetshin is not, and has never been, a Russian GRU officer,[1] intelligence asset, or spy for the Russian Federation or former Soviet Union.

54.     Browder made these false and defamatory statements about Akhmetshin knowing that they were false or with reckless disregard of their falsity.

55.     Browder made these false and defamatory statements in bad faith, as part of a deliberate effort to damage Akhmetshin's reputation and harm Akhmetshin in his trade, business, and profession.

56.     As alleged above, by the time Browder made these defamatory statements, he had been monitoring, or had caused others to monitor, Akhmetshin's activities for some time and had conducted, or had caused to be conducted, an investigation into Akhmetshin's background.  As

---

[1]      The Russian GRU, or Main Intelligence Directorate, is the Russian Federation's foreign intelligence agency.

reflected in the Hermitage Letter, Browder was aware of Akhmetshin's lobbying and consulting activities.

57.     Moreover, publicly available documents – of which Browder was, or should have been, aware – demonstrated that Akhmetshin, on behalf of his clients, had worked hand-in-hand with various agencies of the United States.

58.     Browder had no good faith basis for stating that Akhmetshin was a "Russian GRU officer," a "Russian intelligence asset," a "member of Putin's secret police," a "former Soviet spy," and a "current spy operator in Washington."  Upon information and belief, Browder made no effort to verify the truth of those allegations and was aware that no good faith basis existed for making them.

### The Defamatory Statements Were False Statements of Fact

59.     Browder has consistently promoted himself as a trustworthy source of facts about the Hermitage Tax Refund Scheme and Magnitsky's imprisonment.  On multiple occasions, Browder has provided fact testimony concerning his experiences in Russia, the Hermitage Tax Refund Scheme, and Magnitsky's imprisonment to the U.S. government.

    a.     Browder provided such fact testimony to the United States Helsinki Commission on or about June 23, 2009.

    b.     Browder provided additional fact testimony to the Tom Lantos Human Rights Commission of the U.S. House of Representatives on or about November 15, 2012.

    c.     Browder provided additional fact testimony to the Committee on Foreign Affairs, Subcommittee on Africa, Global Health, Global Human Rights, and International Organizations, of the U.S. House of Representatives on or about April 29, 2015.

       d.      Browder provided additional fact testimony to the Senate Judiciary Committee on or about July 26, 2017.

       e.      Browder provided additional fact testimony to the United States Helsinki Commission on or about December 14, 2017.

60.      In addition, in 2015 Browder published a book, *Red Notice*, which purported to tell the truth about the Hermitage Tax Refund Scheme and the Magnitsky affair.

61.      In his purported capacity as an expert on Russian finances, politics, and intelligence, Browder has appeared dozens of times on television programs, on radio segments, at think tank events, and at NGO gatherings in Washington D.C.

62.      Based on Browder's prior publications and appearances, Browder has a reputation as an expert on Russian politics and intelligence.  Accordingly, a reasonable reader of Browder's false statements about Akhmetshin would have concluded that they were statements of *fact*.

***The Defamatory Statements Were Directed at the District of Columbia***

63.      Upon information and belief, Browder directed his defamatory statements about Akhmetshin at the District of Columbia.

64.      As noted, Browder made the defamatory statements with the intent of discrediting Akhmetshin and his lobbying efforts.  Akhmetshin's lobbying efforts on behalf of HRAGI were directed at lawmakers and staff in Washington, D.C.  Akhmetshin lobbied members of Congress and their staffers and organized a documentary screening at the Newseum in Washington, D.C.

65.      Indeed, in his *CBS This Morning* appearance, Browder explicitly referred to Akhmetshin as a "spy operator *in Washington*" (emphasis added).

66.      Browder's defamatory statements against Akhmetshin were clearly designed to undermine Akhmetshin's credibility as a lobbyist in Washington, D.C.  Thus, upon information

and belief, Browder directed his defamatory statements about Akhmetshin to readers and viewers in Washington, D.C.

***Defendant's Malicious Lies Have Materially Injured Akhmetshin***

67.     As a result of Defendant's malicious lies, Akhmetshin has suffered significant reputational and economic harm in Washington, D.C., where he lives and works.

68.     Defendant has a large audience.  His book, *Red Notice*, has been a best-seller since 2015, and his Twitter account (from which he published two of the defamatory statements) has well over 100,000 followers.

69.     Upon information and belief, *CBS This Morning* has well over 3.5 million viewers.

70.     According to BusinessInsider.com, *Business Insider* has over 97 million viewers.

71.     Akhmetshin's career as a lobbyist and consultant depends upon his good reputation.  Browder has deliberately tarnished that reputation by broadcasting his false accusations about Akhmetshin to the large audience of people who view Browder as a reliable source of information about Russia.  No one in Washington seeking assistance on Capitol Hill will hire a lobbyist suspected of being a Russian spy, which is a serious crime against the United States.  Indeed, being labelled a spy is tantamount to being labelled a traitor.  As a result, Akhmetshin's business has in fact suffered since Browder's defamatory statements.

72.     For example, Akhmetshin was to be engaged as a consultant to advise on multimillion dollar litigation.  After multiple strategy sessions and meetings concerning that engagement, the prospective client informed him that the client could not pursue the engagement because Akhmetshin's name was too "radioactive" and would be a distraction on the matter.

73.     Akhmetshin has also suffered emotional harm as a result of Browder's defamatory statements.  People who heard and believed Browder's accusations of Akhmetshin being a Russian spy harassed Akhmetshin, threatened his security, and in some instances, threatened his life.  These threats and harassing communications caused Akhmetshin significant anxiety and emotional distress.

### FIRST CAUSE OF ACTION
#### (Defamation)

74.     Plaintiff repeats and re-alleges each of the foregoing paragraphs as if fully set forth herein.

75.     Defendant made false and defamatory statements concerning the plaintiff.

76.     Defendant published the statements without privilege to a third party.

77.     Defendant published the statements with negligence and with actual malice. Defendant published the statements with reckless disregard for their veracity.

78.     Either the statements were actionable as a matter of law irrespective of special harm, or their publication caused the plaintiff special harm.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests judgment:

1.     Awarding Plaintiff money damages in an amount to be determined at trial, but not less than $1,000,000.00; and

2.     Granting such other and further relief as the Court deems just and proper.

## DEMAND FOR A JURY TRIAL

Plaintiff demands a jury trial.


Dated:  Washington, D.C.
         July 12, 2018

                      /s/ Kim H. Sperduto
                      Kim H. Sperduto (D.C. Bar No. 416127)
                      SPERDUTO THOMPSON & GASSLER PLC
                      1747 Pennsylvania Avenue, N.W.
                      Suite 1250
                      Washington, D.C. 2006
                      Telephone: (202) 408-8900
                      Email: ksperduto@stglawdc.com

                      Michael Tremonte (*pro hac vice* motion pending)
                      Michael W. Gibaldi (*pro hac vice* motion pending)
                      SHER TREMONTE LLP
                      90 Broad Street, 23rd Floor
                      New York, N.Y. 10004
                      Telephone: (212) 202-2600
                      Email: mtremonte@shertremonte.com

                      *Attorneys for Plaintiff Rinat Akhmetshin*