# Exhibit S

# KOBRE & KIM LLP

1919 M STREET, NW
WASHINGTON, DC 20036
WWW.KOBREKIM.COM

TEL +1 202 664 1900
FAX +1 202 664 1920

NEW YORK
LONDON
HONG KONG
SEOUL
WASHINGTON DC
SAN FRANCISCO
MIAMI
CAYMAN ISLANDS
BVI

April 27, 2016

**BY EMAIL**

Kimberley D. Harris, General Counsel, NBC Universal
Steve Burke, CEO, NBC Universal
Mark Hoffman, Chairman, NBC Broadcasting
Andrew Lack, Chairman, NBC News and MSNBC
NBC Universal
30 Rockefeller Plaza
New York, NY 10112

**URGENT: regarding article with quoted deadline of April 27, 2016**

        **Re:    Reporter Ken Dilanian's Article re: Sergei Magnitsky**

Dear Ms. Harris:

We write on behalf of our client, William Browder. We have reviewed emails between your journalist, Ken Dilanian, and Mr. Browder.[1] Mr. Dilanian has indicated that he intends to publish today an article regarding certain allegations that Mr. Browder "concocted the story of Magnitsky as a whistleblower to cover up [his] own alleged tax fraud."

Based on Mr. Dilanian's questions and responses to Mr. Browder to date, it is clear that although Mr. Dilanian claims to have investigated these allegations, he has not read the key documents, which are both publically available and have been provided by Mr. Browder, and which clearly demonstrate the falsity of the claims against Mr. Browder.

If Mr. Dilanian believes he has conducted a complete investigation—without carefully reading key documents—he has seriously breached journalistic standards and should be removed from this story. Given that there is no urgency in publishing this story, we urge NBC to delay publishing until someone has thoroughly reviewed the relevant evidence.

---

[1] See attached as Exhibit A.

April 27, 2016
Page 2

Mr. Dilanian's complete lack of investigation is obvious from his exchanges with Mr. Browder. For example, on Monday, April 25, 2016, Mr. Dilanian initially claimed that his team had found "no evidence that Magnitsky was severely beaten just before his death." This is strange given the publicly available photos from the official autopsy of Mr. Magnitsky, which show injuries consistent with a beating.[2]

The next day, Mr. Dilanian wrote:

> You have repeatedly said Magnitsky was beaten with rubber batons just before his death by eight guards for more than an hour. "Eight riot guards with rubber batons beat him for an hour and 18 minutes until he died," you said on MSNBC on February 5th, 2015. The report by Russia's Public Oversight Commission for Human Rights, which has been widely cited as a definitive account of Magnitsky's treatment, makes no mention of beatings, and says there were no marks on Magnitsky's body other than handcuff bruises. What is the evidence that he was beaten by eight riot guards for 78 minutes before he died? If that happened, why would there be no bruises or other marks on his head and torso?

These assertions and questions demonstrate that Mr. Dilanian has not read the report he references, which states, "[Mr.] Magnitsky was completely deprived of medical care before his death. In addition, there is reasonable suspicion to believe that the death was triggered by beating Magnitsky: later his relatives recorded smashed knuckles and bruises on his body. In addition, there is no medical description of the last hour of his life."[3]

Furthermore, as Mr. Browder pointed out to Mr. Dilanian in his response, the evidence concerning eight riot guards is from the first report published by an independent Moscow Public Oversight Commission, which was widely covered.[4] There is additional evidence of 8 riot guards in applications by Mr. Magnitsky's mother, Mrs. Magnitskaya, who has sought to open a torture and murder investigation into her son's death.[5]

Mr. Dilanian also inquired about why there were no marks on Mr. Magnitsky's head. Again, a basic investigation would have revealed that the report of the Council of Europe's investigation under the Parliamentary Assembly's mandate described at paragraph 143, "The official death certificate ('act of death') of 16 November 2009 prepared on the day of Mr Magnitsky's death, signed by Dr Gaus, Major Markov and Captain Pluzhnikov and bearing an official stamp

---

[2] http://russian-untouchables.com/eng/cover-up-presentation/
[3] http://president-sovet.ru/documents/read/59; http://russian-untouchables.com/rus/docs/Civil-Right-Council-conclusion-report-Executive-summary-ENG.pdf
[4] http://online.wsj.com/public/resources/documents/WSJ-20091229-MagnitskyReport.pdf; see also a contemporaneous article on this investigation: http://www.wsj.com/articles/SB126201494953707549
[5] http://russian-untouchables.com/rus/docs/D275.pdf

April 27, 2016
Page 3

includes as one of the (possible) causes of death, in addition to 'heart failure,' a 'closed craniocerebral injury.'" A copy of this document in its original form was obtained by the Public Oversight Committee, but it was later amended, for unexplained and uninvestigated reasons. While the date, the layout and the signatures remained unchanged, the reference to the "closed craniocerebral injury" disappeared.[6]

It is inconceivable that Mr. Dilanian could publish an article for an esteemed media company such as NBC while ignoring this evidence. And there are numerous other examples of his failure to conduct an adequate investigation. Paragraph 6 of Mr. Dilanian's list of questions to Mr. Browder demonstrates that he did not study the documents he claims to have read:

> You have said that Magnitsky was detained because he testified that the police were involved in the $230 million fraud. The original language documents NBC News has examined from the Russian untouchables web site (which you testified was your web site) say he was detained in a tax fraud case involving your companies. They show he did not accuse the police until 2009.

If NBC had examined Mr. Browder's web site, Mr. Dilanian would have seen the testimony of Sergei Magnitsky of June 5, 2008, in which he did testify against the police and both of the officers.

In his follow up questions from today, Mr. Dilanian claims "we are struggling to see how that complaint accuses Karpov and Kuznetsov of doing anything improper." But the December 3, 2007 complaint plainly alleges suspected assistance on the part of law enforcement officers: "The large scale falsification of documents of title, authority of representatives, information in the Unified State Registry of Legal Entities and court rulings is virtually impossible without a deliberate or accidental assistance of law enforcement officers and arbitration court officials."[7] Any objective analysis of this document is that it made allegations of abetting fraud against Mr. Karpov and Mr. Kuznetsov. It is incomprehensible that Mr. Dilanian read this document and struggled to see these as allegations of impropriety against Russian police officers.

Similarly, Mr. Dilanian initially claimed that Mr. Magnitsky's testimony "shows he did not mention Kuznetov and Karpov." A simple reading of Mr. Magnitsky's testimony, however, shows one official was named 14 times, and the other 13 times.

Based on the above, it appears that NBC news is either deliberately trying to come to the wrong conclusion, or is completely failing to conduct any sort of reasonable investigative work before publishing this story. Our client has already begun legal proceedings in Europe in relation to the

---

[6] http://assembly.coe.int/nw/xml/XRef/Xref-DocDetails-EN.asp?FileID=20345
[7] https://drive.google.com/file/d/0B6nugCIZ1LPPdF9yalZZOFVYd00/view?pref=2&pli=1

April 27, 2016
Page 4

false allegations Mr. Dilanian plans to report on, which have been characterized as "false," "untrue," and "flatly incorrect" by the Department of Justice in its court papers.

Mr. Dilanian's emails set forth allegations of the utmost seriousness to Mr. Browder. These allegations contain false, defamatory, and materially misleading information. They advance a false narrative that is plainly offensive and gravely defamatory of our client, and if published could cause serious harm to his reputation. You are on notice that you will be fully liable for the publication of any such allegations.

We urge you to direct someone other than Mr. Dilanian at NBC Universal to conduct further factual investigation in relation to this story. There is no public interest in repeating false, defamatory, inaccurate and/or misleading information.

Please confirm prior to your print deadline or 10 pm Eastern time that no article will be published without further investigation.

All our client's rights and remedies worldwide remain fully reserved.

Sincerely,

*Rachel E. Goldstein*

Rachel E. Goldstein
+1 202 664 1965


CC (by email):        Ken Dilanian, Intelligence and National Security Reporter