UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| RINAT AKHMETSHIN, | |
| Plaintiff, | Case No. 18-01638 (EGS) |
| v. | |
| WILLIAM BROWDER, | |
| Defendant. | |

**MEMORANDUM IN OPPOSITION TO DEFENDANT'S SPECIAL MOTION TO DISMISS THE COMPLAINT PURSUANT TO THE D.C. ANTI-SLAPP ACT**

Michael Tremonte (*pro hac vice*)
Michael W. Gibaldi (*pro hac vice*)
SHER TREMONTE LLP
90 Broad Street, 23rd Floor
New York, New York 10004
(212) 202-2600
mtremonte@shertremonte.com
mgibaldi@shertremonte.com

Kim Sperduto (D.C. Bar No. 416127)
SPERDUTO THOMPSON & GASSLER PLC
1747 Pennsylvania Avenue, N.W., Suite 1250
Washington, D.C. 2006
(202) 408-8900
ksperduto@stglawdc.com

*Attorneys for Plaintiff Rinat Akhmetshin*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...................................................................................................... ii
PRELIMINARY STATEMENT .................................................................................................. 1
BACKGROUND ........................................................................................................................... 2
ARGUMENT ................................................................................................................................. 2
I. CLEAR D.C. CIRCUIT PRECEDENT PRECLUDES APPLICATION OF THE ANTI-SLAPP ACT IN A FEDERAL DIVERSITY ACTION ................................................. 2
    A. The *Abbas* Decision Unambiguously Holds That the Anti-SLAPP Statute Does Not Apply in Federal Diversity Cases ............................................................................ 3
    B. The *Mann* Decision of the D.C. Court of Appeals Does Not Permit This Court To Ignore *Abbas* ................................................................................................................. 4
    C. Every Judge of This District Has Continued To Follow *Abbas* After *Mann* ............... 7
II. EVEN IF THE ANTI-SLAPP ACT APPLIES IN FEDERAL COURT, DEFENDANT'S MOTION SHOULD BE DENIED IN THIS CASE ............................................................. 9
III. ALTERNATIVELY, THE COURT SHOULD PERMIT "TARGETED DISCOVERY" BEFORE RULING ON DEFENDANT'S SPECIAL MOTION ......................................... 10
CONCLUSION ............................................................................................................................ 11

## TABLE OF AUTHORITIES

**Cases**

*3M Co. v. Boulter*,
    842 F. Supp. 2d 85 (D.D.C. 2012) ............................................................................................ 8

*Abbas v. Foreign Policy Group, LLC*,
    783 F.3d 1328 (D.C. Cir. 2015) ........................................................................................ *passim*

*Cockrum v. Donald J. Trump for President, Inc.*,
    319 F. Supp. 3d 158 (D.D.C. 2018) ........................................................................................... 8

*Competitive Enterprise Institute v. Mann*,
    150 A.3d 1213 (D.C. 2016) ............................................................................................. *passim*

*Democracy Partners v. Project Veritas Action Fund*,
    285 F. Supp. 3d 109 (D.D.C. 2018) ........................................................................................... 8

*Deripaska v. Associated Press*,
    No. CV 17-00913 (ESH), 2017 WL 8896059 (D.D.C. Oct. 17, 2017) ...................................... 8

*Easaw v. Newport*,
    253 F. Supp. 3d 22 (D.D.C. 2017) ......................................................................................... 5, 7

*Erie Railroad Co. v. Tompkins*,
    304 U.S. 64 (1938) ..................................................................................................................... 7

*Fairbanks v. Roller*,
    314 F. Supp. 3d 85 (D.D.C. 2018) ............................................................................................. 8

*Liberty Synergistics Inc. v. Microflo Ltd.*,
    718 F.3d 138 (2d Cir. 2013) ....................................................................................................... 7

*Libre By Nexus v. Buzzfeed, Inc.*,
    311 F. Supp. 3d 149 (D.D.C. 2018) ....................................................................................... 7, 9

*Parsi v. Daioleslam*,
    595 F. Supp. 2d 99 (D.D.C. 2009) ........................................................................................... 11

*Shady Grove Orthopedic Associates, P.A. v. Allstate Insurance Co.*,
    559 U.S. 393 (2010) ................................................................................................................... 3

*United States v. Torres*,
    115 F.3d 1033 (D.C. Cir. 1997) ................................................................................................. 2

*Unity Healthcare, Inc. v. Cnty. of Hennepin*,
    308 F.R.D. 537 (D. Minn. 2015) ............................................................................................ 6, 7

**Statutes and Rules**

Fed. R. Civ. P. 12 ........................................................................................................... *passim*

Fed. R. Civ. P. 56 ........................................................................................................... *passim*

D.C. Code § 16-5501 .................................................................................................... *passim*

Plaintiff Rinat Akhmetshin ("Akhmetshin") respectfully submits this memorandum of points and authorities in opposition to the Special Motion to Dismiss the Complaint pursuant to the D.C. Anti-Strategic Lawsuits Against Public Participation Act, D.C. Code § 16-5501 *et seq.* (the "Anti-SLAPP Act") filed by Defendant William Browder ("Browder").

## PRELIMINARY STATEMENT

In *Abbas v. Foreign Policy Group, LLC*, the D.C. Circuit considered the issue "whether a federal court exercising diversity jurisdiction may apply the D.C. Anti-SLAPP Act's special motion to dismiss provision." 783 F.3d 1328, 1333 (D.C. Cir. 2015). In an opinion authored by then-Judge Kavanaugh, the D.C. Circuit unambiguously concluded: "The answer is no. Federal Rules of Civil Procedure 12 and 56 establish the standards for granting pre-trial judgment to defendants in cases in federal court. A federal court must apply those Federal Rules instead of the D.C. Anti-SLAPP Act's special motion to dismiss provision." *Id.*

*Abbas* has not been overruled and, therefore, its holding remains binding on this Court. Browder seeks to escape binding precedent of the D.C. Circuit by claiming that *Abbas* is longer good law in light of *Competitive Enterprise Institute v. Mann*, 150 A.3d 1213 (D.C. 2016), a decision of the D.C. Court of Appeals. Browder is wrong. Indeed, as even Browder concedes in his motion papers, *Browder's argument has been rejected by every judge in this district to have considered it.* As discussed below, because the D.C. Circuit has held in *Abbas* that the Anti-SLAPP Act's special motion procedure does not apply in a federal diversity action, such as this one, Browder's special motion to dismiss under the Anti-SLAPP Act must be denied.

In any event, Browder's Anti-SLAPP motion should be denied because Akhmetshin's claim is likely to succeed on the merits. Alternatively, the Court should not decide Browder's special motion to dismiss before permitting Akhmetshin to take the "targeted discovery" provided by the Anti-SLAPP Act.

1

BACKGROUND

Akhmetshin respectfully refers the Court to his separate Memorandum in Opposition to the Defendant's Motion to Dismiss for a discussion of the relevant factual background.

ARGUMENT

I. **CLEAR D.C. CIRCUIT PRECEDENT PRECLUDES APPLICATION OF THE ANTI-SLAPP ACT IN A FEDERAL DIVERSITY ACTION**

The D.C. Anti-SLAPP Act's special motion procedure "not only provides substantial advantages to the defendant over and above those usually available in civil litigation, but also imposes procedural and financial burdens on the plaintiff." *Competitive Enter. Inst. v. Mann*, 150 A.3d 1213, 1238 (D.C. 2016). Specifically, to obtain dismissal, a defendant must make only "a prima facie showing that the claim at issue arises from an act in furtherance of the right of advocacy on issues of public interest." D.C. Code § 16-5502(b). If the defendant makes this prima facie showing, then the burden shifts to the plaintiff to demonstrate "that the claim is likely to succeed on the merits, in which case the motion shall be denied." *Id.* This procedure "requires more than mere reliance on allegations in the complaint, and mandates the production or proffer of evidence that supports the claim." *Mann*, 150 A.3d at 1233.

This burden-shifting framework conflicts directly with the procedures for pre-trial dismissal created by Rules 12 and 56 of the Federal Rules of Civil Procedure. Consequently, the Anti-SLAPP Act's special motion procedure cannot apply in a federal court exercising diversity jurisdiction. That is the clear holding of the D.C. Circuit's *Abbas* decision, which binds this Court. *See, e.g.*, *United States v. Torres*, 115 F.3d 1033, 1036 (D.C. Cir. 1997) ("district judges, like panels of this court, are obligated to follow controlling circuit precedent until either we, sitting en banc, or the Supreme Court, overrule it").

### A. The *Abbas* Decision Unambiguously Holds That the Anti-SLAPP Statute Does Not Apply in Federal Diversity Cases

In *Abbas*, the D.C. Circuit confronted the applicability of the D.C. Anti-SLAPP Act's special motion procedure in federal court. The starting point for the Court's analysis was the Supreme Court's decision in *Shady Grove Orthopedic Associates, P.A. v. Allstate Insurance Co.*, 559 U.S. 393 (2010), in which the Supreme Court reaffirmed that "[a] federal court exercising diversity jurisdiction should not apply a state law or rule if (1) a Federal Rule of Civil Procedure 'answer[s] the same question' as the state law or rule and (2) the Federal Rule does not violate the Rules Enabling Act." *Abbas*, 783 F.3d at 1333 (quoting *Shady Grove*, 559 U.S. 398–99). Applying this standard to the case at bar, the D.C. Circuit observed that the D.C. Anti-SLAPP Act's special motion procedure differs meaningfully from the Federal Rules. Writing for a unanimous panel, then-Judge Kavanaugh made the following observations:

> For the category of cases that it covers, the D.C. Anti-SLAPP Act establishes the circumstances under which a court must dismiss a plaintiff's claim before trial – namely, when the court concludes that the plaintiff does not have a likelihood of success on the merits. But Federal Rules of Civil Procedure 12 and 56 "answer the same question" about the circumstances under which a court must dismiss a case before trial. And those Federal Rules answer that question differently: They do not require a plaintiff to show a likelihood of success on the merits.
>
> That difference matters. Under the Federal Rules, a plaintiff is generally entitled to trial if he or she meets the Rules 12 and 56 standards to overcome a motion to dismiss or for summary judgment. But the D.C. Anti-SLAPP Act nullifies that entitlement in certain cases. Under the D.C. Anti-SLAPP Act, the plaintiff is not able to get to trial just by meeting those Rules 12 and 56 standards. The D.C. Anti-SLAPP Act, in other words, conflicts with the Federal Rules by setting up an additional hurdle a plaintiff must jump over to get to trial.

*Id.* at 1333–34. Because, "unlike the D.C. Anti-SLAPP Act, the Federal Rules do not require a plaintiff to show a likelihood of success on the merits in order to avoid pre-trial dismissal," the

3

D.C. Circuit held that the D.C. Anti-SLAPP Act's special motion provision cannot apply in federal court. *See id.* at 1334.[1]

After reaching this conclusion, the D.C. Circuit proceeded to examine, and reject, several counterarguments advanced by the Anti-SLAPP Act's proponents – including the argument that the Anti-SLAPP Act's procedures are "functionally identical to Federal Rule 56's summary judgment test." *See Abbas*, 783 F.3d at 1334. "The main problem" with this theory, Judge Kavanaugh noted, was that "the D.C. Court of Appeals has never interpreted the D.C. Anti-SLAPP Act's likelihood of success standard to simply mirror the standards imposed by Federal Rules 12 and 56." *Id.* at 1334–35. To the contrary, "the D.C. Anti-SLAPP Act's likelihood of success standard is different from and more difficult for plaintiffs to meet than the standards imposed by Federal Rules 12 and 56." *Id* at 1335.

>    B.    **The *Mann* Decision of the D.C. Court of Appeals Does Not Permit This Court To Ignore *Abbas***

Browder asks this Court to ignore binding precedent of the D.C. Circuit on the basis of a single footnote from the D.C. Court of Appeals' decision in *Mann*. In that footnote, the D.C. Court of Appeals observed that, although "the special motion to dismiss is different from summary judgment in that it imposes the burden on plaintiffs and requires the court to consider the legal sufficiency of the evidence presented before discovery is completed," the "standard to be employed by the court in deciding whether to grant the motion . . . is substantively the same: whether the evidence suffices to permit a jury to find for the plaintiff." *Mann*, 150 A.3d at 1238

---

[1] The Court further concluded that Rules 12 and 56 of the Federal Rules of Civil Procedure "are valid under the Rules Enabling Act." *Abbas*, 783 F.3d at 1337. Browder does not dispute that holding in his motion.

n.32. In this way, *Mann* noted that the Anti-SLAPP procedure "'mirror[s] the standards imposed by' Federal Rule 56." *Id.* (quoting *Abbas*, 783 F.3d at 1335).

As an intervening decision of the D.C. Court of Appeals, the *Mann* decision could conceivably trump binding precedent of the D.C. Circuit *only* if the D.C. Court of Appeals' decision "*clearly and unmistakably* renders inaccurate a prior decision by the D.C. Circuit interpreting D.C. law." *Easaw v. Newport*, 253 F. Supp. 3d 22, 35 (D.D.C. 2017) (emphasis added). For several reasons, that is not the case here. Thus, Browder's argument must fail.

*First*, and most fundamentally, *Mann* does not alter the D.C. Circuit's conclusion in *Abbas* that the Anti-SLAPP Act's special motion procedure impermissibly conflicts with *Rule 12* of the Federal Rules of Civil Procedure. The *Mann* decision only compared the Anti-SLAPP Act's procedure to the procedure for *summary judgment*. *See Mann*, 150 A.3d at 1238 n.32. Indeed, *Mann* observed that a full "comparison of the procedures usually available in civil litigation makes clear that the complement of provisions of the Anti-SLAPP Act impose requirements and burdens on the claimant that significantly advantage the defendant." *Id.* at 1237. In particular, *Mann* recognized that the Anti-SLAPP Act's burden-shifting framework "*is a reversal of the allocation of burdens for dismissal of a complaint under Superior Court Rule of Civil Procedure 12(b)(6)*, which requires the moving party to show that the complaint's allegations, even if proven, would not state a claim as a matter of law." *Id.* (emphasis added).[2] This dissimilarity in procedures is precisely what led the D.C. Circuit to conclude in *Abbas* that the Anti-SLAPP Act cannot apply in federal court. *See Abbas*, 783 F.3d at 1334 (contrasting

---

[2] D.C. Superior Court Rule of Civil Procedure 12(b)(6) is identical in all material respects to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

5

Anti-SLAPP Act with Rule 12(b)(6), according to which "a plaintiff can overcome a motion to dismiss by simply alleging facts sufficient to state a claim that is plausible on its face").

*Second*, Browder overstates the *Mann* decision's analogy to Rule 56. Although *Mann* observed that the Anti-SLAPP Act's likelihood of success standard "mirror[s] the standards" imposed by Rule 56, the court also observed in the very same footnote:

> The D.C. Circuit has described the Anti-SLAPP Act's "likely to succeed" standard as "an additional hurdle a plaintiff must jump over to get to trial," and opined (without elaboration) that the standard "is different from and more difficult" than for summary judgment under Federal Rule 56. *Abbas v. Foreign Policy Grp., LLC*, 783 F.3d 1328, 1333–34 (D.C. Cir. 2015). For the reasons we note in the text, we agree with *Abbas* that the special motion to dismiss is different from summary judgment in that it imposes the burden on plaintiffs and requires the court to consider the legal sufficiency of the evidence presented before discovery is completed. As concerns the standard to be employed by the court in deciding whether to grant the motion, however, the question is substantively the same: whether the evidence suffices to permit a jury to find for the plaintiff.

*Mann*, 150 A.3d at 1238 n.32. The court also noted in a separate portion of its opinion that the Anti-SLAPP Act's procedure constitutes "a reversal of the allocation of burdens" for summary judgment, "which requires the moving party to wait until discovery has been completed and then shoulder the initial burden of showing that there are no material facts genuinely in dispute and that the movant is entitled to judgment as a matter of law on the undisputed facts." *Id.* at 1237. Thus, even according to *Mann*, "Rule 56 collides head-on" with the Anti-SLAPP Act in at least two material respects. *See Unity Healthcare, Inc. v. Cnty. of Hennepin*, 308 F.R.D. 537, 541 (D. Minn. 2015) (describing similar Minnesota Anti-SLAPP Act). *First*, "[t]he restrictive standard for discovery under the anti-SLAPP law is oil to the water of Rule 56's more permissive standard," according to which "Rule 56 makes discovery the norm and ensures that adequate discovery will occur before summary judgment is considered." *Id.* (internal citations and

6

quotation marks omitted). *Second*, unlike the Anti-SLAPP Act, which places the burden on the nonmoving party, Rule 56 places the burden on the moving party, and "all inferences must be drawn in favor of the nonmoving party." *Id.* In sum, *Mann* does not "clearly and unmistakably" render inaccurate the D.C. Circuit's interpretation of D.C. law in *Abbas*, *see Easaw*, 253 F. Supp. 3d at 35, which held that the Anti-SLAPP Act differed materially from the federal procedures for pre-trial dismissal. *See Abbas*, 783 F.3d at 1334.

*Third*, even if *Mann* undermined *Abbas* in some way, which it does not, *Abbas* remains binding precedent on this Court because *Abbas* applied *federal* law, not D.C. law. *Cf. Easaw*, 253 F. Supp. 3d at 34 (holding that "when the D.C. COA has spoken clearly and unmistakably *to the current state of D.C. law*, its views must govern" (emphasis added)). Fundamentally, *Abbas* considered the question whether a federal court exercising diversity jurisdiction may apply a particular state law or rule. *See* 783 F.3d at 1333. *Federal law* – in particular, the doctrine of *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938), and its progeny – mandates the answer to that question. *See, e.g.*, *Liberty Synergistics Inc. v. Microflo Ltd.*, 718 F.3d 138, 152 (2d Cir. 2013) (holding that *Erie* analysis itself "is a question of *federal* law"). Thus, *Abbas* premised its analysis upon the Supreme Court's decision in *Shady Grove*, which falls in the *Erie* line of cases. *See Abbas*, 783 F.3d at 1334 ("Under *Shady Grove*, therefore, we may not apply the D.C. Anti-SLAPP Act's special motion to dismiss provision."). Because *Abbas* rests upon an application of federal law, the D.C. Court of Appeals in *Mann* acknowledged that "[t]he applicability of the Anti-SLAPP statute in federal court is not for this court to determine." 150 A.3d at 1238 n.32.

C.   **Every Judge of This District Has Continued To Follow *Abbas* After *Mann***

Browder is not the first defendant to raise *Mann* in an attempt to discard *Abbas*. Other defendants have made precisely the same argument before other judges in this district. In each case, the court has adhered to *Abbas*. *See Libre By Nexus v. Buzzfeed, Inc.*, 311 F. Supp. 3d 149,

7

158–61 (D.D.C. 2018); *Fairbanks v. Roller*, 314 F. Supp. 3d 85, 93–95 (D.D.C. 2018); *Democracy Partners v. Project Veritas Action Fund*, 285 F. Supp. 3d 109, 127–28 (D.D.C. 2018); *Deripaska v. Associated Press*, No. CV 17-00913 (ESH), 2017 WL 8896059, at *1–*3 (D.D.C. Oct. 17, 2017); *Cockrum v. Donald J. Trump for President, Inc.*, 319 F. Supp. 3d 158, 165 n.2 (D.D.C. 2018).

For instance, Judge Mehta recently analyzed the continuing vitality of *Abbas* as follows:

> Notwithstanding *Mann*'s clarification of the D.C. Anti-SLAPP Act standard, *Mann* does not "clearly and unmistakably" compel the court to deviate from the Circuit's holding in *Abbas*. The two motion-to-dismiss standards are fundamentally at odds. First, under the D.C. Anti-SLAPP Act, a plaintiff must produce or proffer evidence to survive a special motion to dismiss. *Id.* at 1233. On the other hand, a plaintiff need only plead facts establishing a "plausible" defamation claim to survive a motion to dismiss under Rule 12(b)(6). *See Abbas*, 783 F.3d at 1334. The court in *Mann* expressly recognized this difference. *See* 150 A.3d at 1233 ("[U]nless something more than argument based on the allegations in the complaint is required, the special motion to dismiss created by the Act would be redundant in light of the general availability, in all civil proceedings . . . of motions to dismiss under Rule 12(b)(6).").
>
> Second, Rule 12 and the D.C. Anti-SLAPP Act differ in terms of the allocation of the burden among the parties:
>
>> [T]he Act reverses "the allocation of burdens for dismissal of a complaint under" Rule 12(b)(6), giving defendants "the option to up the ante early in the litigation, by filing a special motion to dismiss that will require the plaintiff to put his evidentiary cards on the table . . . [which] makes the plaintiff liable for the defendant's costs and fees in the motion succeeds."
>
> *Deripaska*, 2017 WL 8896059, at *2 (second and third alterations in original) (citation and footnote omitted) (quoting *Mann*, 150 A.3d at 1237–38). Such burden-shifting at the motion to dismiss is anathema to the Rule 12(b)(6) standard, which places the burden squarely on the defendant to justify dismissal. *Cf. 3M Co. v. Boulter*, 842 F. Supp. 2d 85, 102 (D.D.C. 2012) ("There is no question that

8

the special motion to dismiss under the Anti-SLAPP Act operates greatly to a defendant's benefit by altering the procedure otherwise set forth in Rule[ ] 12 . . . for determining a challenge to the merits of a plaintiff's claim and by setting a higher standard *upon the plaintiff* to avoid dismissal." (emphasis added)).

In view of these differences, this court must follow *Abbas*. *Libre By Nexus*, 311 F. Supp. 3d at 159–61. Judge Mehta's analysis is illustrative of the numerous decisions to have reached to the same conclusion. There is no basis for this Court to reach a different outcome.

## II. EVEN IF THE ANTI-SLAPP ACT APPLIES IN FEDERAL COURT, DEFENDANT'S MOTION SHOULD BE DENIED IN THIS CASE

Even if this Court holds the Anti-SLAPP Act applies in federal court, Browder's special motion to dismiss "shall be denied" if Akhmetshin "demonstrates that the claim is likely to succeed on the merits." D.C. Code § 16-5502(b).

Under this standard, the Court should deny Browder's motion because Akhmetshin's defamation claim is, in fact, likely to succeed on the merits. Browder does not deny that he called Akhmetshin a "Russian GRU officer," a "Russian intelligence asset," "a member of Putin's secret police," and a "shady former Soviet spy, current spy operator in Washington." These assertions of fact are false and clearly defamatory. As Akhmetshin has testified before numerous factfinding bodies, including the Senate Judiciary Committee, Akhmetshin is not, and has never been, a Russian GRU officer, intelligence asset, or spy for the Russian Federation or former Soviet Union.[3] Browder knew or should have known that his scurrilous claims were false. As

---

[3]    Akhmetshin respectfully refers the Court to the following excerpt of his testimony before the Senate Judiciary Committee:

> Q. Have you ever served in an intelligence or counterintelligence capacity for the Soviet Union or the Russian Federation?
> A. I have not.

9

Browder boasts in his separately filed papers in support of his Motion to Dismiss the Complaint pursuant to Rule 12, *Browder's firm investigated Akhmetshin and filed a complaint about Akhmetshin with the Department of Justice in 2016*. (The complaint went nowhere.) Thus, of all people, Browder knew or should have known the truth about Akhmetshin. Yet he published defamatory statements about Akhmetshin anyway because he perceived Akhmetshin as a rival to his own lobbying efforts.

Akhmetshin incorporates by reference his separately filed Memorandum in Opposition to the Defendant's Motion to Dismiss for a more fulsome analysis of the facts and law supporting his likelihood of success on the merits.

### III. ALTERNATIVELY, THE COURT SHOULD PERMIT "TARGETED DISCOVERY" BEFORE RULING ON DEFENDANT'S SPECIAL MOTION

Because the Anti-SLAPP Act requires the plaintiff to produce *evidence* supporting his claim, *see Mann*, 150 A.3d at 1233, the Anti-SLAPP Act provides for "targeted discovery" that would permit the plaintiff to defeat a special motion to dismiss: "When it appears likely that targeted discovery will enable the plaintiff to defeat the motion and that the discovery will not be unduly burdensome, the court may order that specified discovery be conducted." D.C. Code § 16-5502(c)(2).

In this case, if the Court holds that the Anti-SLAPP applies in federal court, but harbors some doubt about Akhmetshin's likelihood of success on the merits, then the Court should

---

    Q. Have you ever worked with the GRU?
    A. I have never worked with GRU.
    MR. FOSTER: What was your answer to the last question? I never worked with?
    MR. AKHMETSHIN: I never served with GRU.
    BY MR. DAVIS: Q. Did you ever work with them informally?
    A. I never worked with them informally.

(Tremonte Decl., Ex. A at 21:2–13, ECF No. 22-2.)

permit Akhmetshin to take "targeted discovery" concerning Browder's degree of fault in falsely accusing Akhmetshin of being a Russian spy. To establish his defamation claim, Akhmetshin must prove either that Browder made the defamatory statements negligently or, if the Court determines that Akhmetshin is a limited purpose public figure, then with "actual malice." *See, e.g.*, *Parsi v. Daioleslam*, 595 F. Supp. 2d 99, 104 (D.D.C. 2009). In either case, Akhmetshin should be allowed to take limited discovery concerning, at the very least: (i) Browder's communications about Akhmetshin, and (ii) any other documents in Browder's possession concerning Akhmetshin. Such discovery would not be "unduly burdensome," as Akhmetshin seeks only documents within Browder's immediate possession and control that could be found by executing simple searches for "Rinat" or "Akhmetshin." And such documents are likely to defeat the motion by showing that Browder called Akhmetshin a Russian spy with a reckless disregard for the truth.

## CONCLUSION

For the foregoing reasons, the Defendant's Special Motion to Dismiss the Complaint pursuant to the Anti-SLAPP Act should be denied in its entirety. In the alternative, the Court should defer consideration of the motion pending Plaintiff's request for discovery pursuant to the Anti-SLAPP Act.

Dated: New York, New York
       January 31, 2019

/s/ Michael Tremonte
Michael Tremonte (*pro hac vice*)
Michael W. Gibaldi (*pro hac vice*)
SHER TREMONTE LLP
90 Broad Street, 23rd Floor
New York, New York 10004
(212) 202-2600
mtremonte@shertremonte.com
mgibaldi@shertremonte.com

Kim Sperduto (D.C. Bar No. 416127)
SPERDUTO THOMPSON & GASSLER PLC
1747 Pennsylvania Avenue, N.W., Suite 1250
Washington, D.C. 2006
(202) 408-8900
ksperduto@stglawdc.com

*Attorneys for Plaintiff Rinat Akhmetshin*

12