**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| |
|---|
| RINAT AKHMETSHIN, |
|              Plaintiff, |
| v. |
| WILLIAM BROWDER, |
|              Defendant. |

No. 18-cv-1638 (EGS)

<u>**MEMORANDUM OPINION**</u>

Plaintiff Rinat Akhmetshin ("Mr. Akhmetshin"), a dual citizen of Russia and the United States, brings this defamation action against Defendant William Browder ("Mr. Browder"), a British foreign national. Mr. Akhmetshin alleges that Mr. Browder's lobbying efforts in the United States led to the enactment of the Russia and Moldova Jackson-Vanik Repeal and Sergei Magnitsky Rule of Law Accountability Act of 2012 ("Magnitsky Act"), Pub. L. No. 112-208, 126 Stat. 1496. Mr. Akhmetshin claims that Mr. Browder identified him as a threat to Mr. Browder's lobbying efforts, and that Mr. Browder later defamed him by stating that Mr. Akhmetshin is a Russian spy. Mr. Akhmetshin asserts that Mr. Browder made that claim in four defamatory and false statements—two statements on his Twitter account, another statement during a televised interview, and one quote in a news article.

Mr. Browder moves to dismiss the Complaint pursuant to Rules 12(b)(2) and 12(b)(6) of the Federal Rules of Civil Procedure. Mr. Browder separately moves to dismiss under the District of Columbia's Anti-Strategic Lawsuits Against Public Participation Act ("Anti-SLAPP Act"). Upon careful consideration of the motions, the responses, the replies thereto, the applicable law, and the entire record herein, the Court concludes that it lacks personal jurisdiction over Mr. Browder, and that Mr. Akhmetshin is not entitled to jurisdictional discovery. Therefore, the Court **GRANTS** Mr. Browder's Motion to Dismiss for lack of personal jurisdiction under Rule 12(b)(2), **DENIES** Mr. Browder's Motion to Dismiss under the Anti-SLAPP Act, **DENIES** Mr. Akhmetshin's request for jurisdictional discovery, and **DISMISSES WITHOUT PREJUDICE** this case.

## I.   Background

### A. Factual Background

The following facts—drawn from the Complaint and documents incorporated by reference therein—are assumed to be true. *See Banneker Ventures, LLC v. Graham*, 798 F.3d 1119, 1129 (D.C. Cir. 2015). Mr. Browder is a British citizen who renounced his U.S. citizenship in 1998. Compl., ECF No. 1 at 2 ¶ 10.[1] At some point,

---

[1] When citing electronic filings throughout this Opinion, the Court cites to the ECF page number, not the page number of the filed document.

Mr. Browder moved to Russia where he founded Hermitage Capital Management ("Hermitage"). *Id.* at 4 ¶ 18. Hermitage, one of the largest Russian hedge funds, has amassed over $4 billion in assets. *Id.* In 2008, Russian authorities detained an auditor for Hermitage's law firm, Sergei Magnitsky ("Mr. Magnitsky"), who, in 2009, died in a Russian prison. *Id.* at 4 ¶¶ 19-20. Mr. Browder maintains that "Russian prison guards killed [Mr.] Magnitsky because [Mr.] Magnitsky discovered that Russian government officials and members of organized crime had perpetrated a tax fraud scheme using the identities of several Hermitage portfolio companies (the 'Hermitage Tax Refund Scheme')." *Id.* at 4 ¶ 21.

Mr. Browder started a lobbying campaign after Mr. Magnitsky's death. *See id.* at 4 ¶¶ 22-24. Mr. Browder "engaged numerous lobbying and public relations firms in Washington D.C.; met with members of Congress and their staff, including Senators Benjamin Cardin and John McCain in Washington D.C.; and testified in congressional hearings to advance his narrative about [Mr.] Magnitsky and the Hermitage Tax Refund Scheme." *Id.* at 4 ¶ 23. Mr. Browder eventually wrote a book, *Red Notice*, "purport[ing] to tell the truth about the Hermitage Tax Refund Scheme and the Magnitsky affair." *Id.* at 11 ¶ 60.

On December 14, 2012, Congress passed the Magnitsky Act, *id.* at 4 ¶ 24, authorizing the President to impose sanctions

against certain individuals who committed human rights
violations, including those individuals responsible for the
detention, abuse, or death of Mr. Magnitsky, *id.* at 5 ¶ 26.[2] In
response, Russia implemented a ban on U.S. citizens adopting
Russian orphans. *Id.* at 5 ¶ 27. Soon thereafter, Mr. Akhmetshin
began working for a newly-formed lobbying organization aimed to
restart "Russian adoptions in America by, among other things,
removing [Mr.] Magnitsky's name from the Magnitsky Act." *Id.* at
6 ¶ 34. The lobbying organization was formed based on Mr.
Akhmetshin's interest in educating the public about "[Mr.]
Browder's version of [the] events" regarding the passage of the
Magnitsky Act. *Id.* at 6 ¶ 33. Mr. Akhmetshin became convinced
that Congress enacted the Magnitsky Act based on falsehoods. *Id.*

---

[2] Congress made the following factual findings related to Mr.
Magnitsky's death:

> On July 6, 2011, Russian President Dimitry Medvedev's
> Human Rights Council announced the results of its
> independent investigation into the death of [Mr.]
> Magnitsky. The Human Rights Council concluded that [Mr.]
> Magnitsky's arrest and detention was illegal; he was
> denied access to justice by the courts and prosecutors
> of the Russian Federation; he was investigated by the
> same law enforcement officers whom he had accused of
> stealing Hermitage Fund companies and illegally
> obtaining a fraudulent $230,000,000 tax refund; he was
> denied necessary medical care in custody; he was beaten
> by [eight] guards with rubber batons on the last day of
> his life; and the ambulance crew that was called to treat
> him as he was dying was deliberately kept outside of his
> cell for one hour and [eighteen] minutes until he was
> dead.

Magnitsky Act, Pub. L. No. 112-208, § 402(a)(8), 126 Stat. 1496,
1503.

at 6 ¶ 32.

Before embarking on his lobbying campaign, Mr. Akhmetshin learned that Mr. Browder was the "driving force behind [a] lawsuit" in the United States District Court for the Southern District of New York involving a group of Russian officials and individuals responsible for stealing documents from Hermitage's investment fund, *id.* at 5 ¶ 29, and that the documents produced during discovery in that case led him to "question [Mr.] Browder's version of events concerning the Hermitage Tax Refund Scheme and [Mr.] Magnitsky's death[,]" *id.* at 6 ¶ 31.[3] In April 2016, Mr. Akhmetshin became a "registered lobbyist," crafting a counternarrative to the factual findings set forth in the Magnitsky Act. *Id.* at 6-7 ¶¶ 35-37. Mr. Akhmetshin is a resident of the District of Columbia, *id.* at 2 ¶ 9, where he worked as a lobbyist, *id.* at 11 ¶ 66. In June 2016, Mr. Akhmetshin organized a screening in the District for a documentary that challenged

---

[3] The Court takes judicial notice of the proceedings in *United States v. Prevezon Holdings Ltd., et al.*, Civil Action No. 13-6326-WHP (S.D.N.Y.) and the subsequent appeal. *See Pearson v. District of Columbia*, 644 F. Supp. 2d 23, 45 n.19 (D.D.C. 2009), *aff'd*, 377 F. App'x 34 (D.C. Cir. 2010). A law firm retained Mr. Akhmetshin as a consultant to review and analyze certain documents in a civil forfeiture action in the Southern District of New York. Compl., ECF No. 1 at 5 ¶ 28, 6 ¶ 30. In that case, the government alleged that "Prevezon Holdings Ltd. and related entities ('Prevezon') . . . laundered a portion of the purportedly ill-gotten gains from the Hermitage Tax Refund Scheme through certain New York real estate." *Id.* at 5 ¶ 28; *see also United States v. Prevezon Holdings Ltd.*, 839 F.3d 227, 230 (2d Cir. 2016).

the accuracy of the Magnitsky Act's findings. *Id.* at 7 ¶ 37. In July 2016, Mr. Browder "caused Hermitage to submit a letter to the Department of Justice . . . alleging that [Mr.] Akhmetshin and others had violated the Foreign Agent Registration Act." *Id.* at 7 ¶ 39.[4] Mr. Browder later "identified [Mr.] Akhmetshin as a rival and a threat to his lobbying efforts, upon information and belief, [Mr.] Browder then defamed [Mr.] Akhmetshin by falsely stating to reporters and others that [Mr.] Akhmetshin is a Russian spy." *Id.* at 8 ¶ 43.[5]

---

[4] The Complaint refers to the "Hermitage Letter," *see* Compl., ECF No. 1 at 7 ¶¶ 39-41, and Mr. Browder attaches the July 15, 2016 letter as an exhibit to his motion to dismiss, *see* Ex. E, Def.'s Mot. to Dismiss, ECF No. 20-9 at 2-15. The Court considers the Hermitage Letter in deciding Mr. Browder's motion to dismiss. *See Vanover v. Hantman*, 77 F. Supp. 2d 91, 98 (D.D.C. 1999) ("[W]here a document is referred to in the complaint and is central to plaintiff's claim, such a document attached to the motion papers may be considered without converting the motion to one for summary judgment."), *aff'd*, 38 F. App'x 4 (D.C. Cir. 2002).

[5] The Court takes judicial notice of letters from United States Senator Charles E. Grassley, the former Chairman of the Senate Judiciary Committee, regarding Mr. Akhmetshin's alleged ties to Russian intelligence. *See, e.g.*, *South Carolina v. United States*, No. 1:16-CV-00391-JMC, 2017 WL 976298, at *5 (D.S.C. Mar. 14, 2017) (taking judicial notice of a letter from U.S. senators to the Secretary of Energy); Def.'s Mot. to Dismiss, ECF No. 20 at 13 n.4, 17 (showing that Senator Grassley's three letters were dated March 31, 2017, April 4, 2017, and July 11, 2017, respectively, and the letters were published on the Senate's website); Pl.'s Opp'n, ECF No. 22 at 15. For instance, Senator Grassley wrote that "Mr. Akhmetshin is a Russian immigrant to the U.S. who has admitted having been a 'Soviet counterintelligence officer.'" Letter from Sen. Grassley to John Kelly, Sec'y, U.S. Dept. of Homeland Sec., at 1 (April 4, 2017) (quoting Isaac Arnsdorf, *FARA Complaint Alleges Pro-Russian Lobbying*, POLITICO (Dec. 8, 2016)),

## B. The Four Alleged Defamatory Statements

According to Mr. Akhmetshin, "[Mr.] Browder directed [four] defamatory statements about [Mr.] Akhmetshin at the District of Columbia." *Id.* at 11 ¶ 63. In July 2017, news media outlets widely reported that Mr. Akhmetshin and others met with Donald Trump, Jr., at Trump Tower in New York on June 9, 2016. *Id.* at 8 ¶ 45. On July 14, 2017, Mr. Browder posted two tweets on his personal Twitter account. *Id.* at 8 ¶¶ 48-49. First, Mr. Browder tweeted: "Huge development in the Veselnitskaya/Trump Jr story. **Russian GRU officer Rinat Akhmetshin** was also present." *Id.* at 8 ¶ 48 (emphasis added); *see also* Ex. A, Decl. of Melissa Shube ("Shube Decl."), ECF No. 20-5 at 2-7.[6] Mr. Browder then shared a

---

https://www.judiciary.senate.gov/imo/media/doc/2017-04-04%20CEG%20to%20DHS%20(Akhmetshin%20Information)%20with%20attachment.pdf. Senator Grassley requested certain information about Mr. Akhmetshin's background from the United States Department of Homeland Security. *Id.* at 2. In his opposition brief, Mr. Akhmetshin argues that Senator Grassley wrote those letters in response to Mr. Browder's "baseless allegations" in the Hermitage Letter. Pl.'s Opp'n, ECF No. 22 at 15. But Mr. Akhmetshin does not dispute that the Courthouse News Service published an article in November 2015 about a state action against him that was later dismissed. *See* Pl.'s Opp'n, ECF No. 19 n.11. The article stated: (1) Mr. Akhmetshin was "accused of being a former Soviet spy"; and (2) a "law firm then hired alleged former Soviet military counterintelligence officer Renit Akhmetshin to conduct an illegal hacking campaign, according to a lawsuit filed by the mining company on Nov. 12 in New York County Supreme Court." Nick Rummell, *Mining Company Says Law Firm Hacked It*, Courthouse News Service (Nov. 16, 2015), https://www.courthousenews.com/mining-company-sayslaw-firm-hacked-it/.

[6] According to Mr. Akhmetshin, "[t]he Russian GRU, or Main Intelligence Directorate, is the Russian Federation's foreign

hyperlink to the NBC News article entitled "Former Soviet
counterintelligence officer at meeting With Donald Trump Jr. and
Russian lawyer" in that tweet. Ex. A, ECF No. 20-5 at 2. More
than one hour later, Mr. Browder issued a second statement,
tweeting that "**Russian intelligence asset Rinat Akhmetshin**
confirms he was in the meeting with Trump Jr[,]" and sharing a
hyperlink to an Associated Press ("AP") article in that Twitter
post. Compl., ECF No. 1 at 8 ¶ 49 (emphasis added); *see also* Ex.
B, Shube Decl., ECF No. 20-6 at 2-12.[7]

On the same day, the website *Business Insider* published an
article entitled "A Soviet military officer turned lobbyist
attended the Trump Jr. meeting – and there may have been a 6th
person, too." Ex. C, Shube Decl., ECF No. 20-7 at 2. That
article included a quote from Mr. Browder: "So in my opinion you
had a member of Putin's secret police directly meeting with the
son of the future next president of the United States asking to

---

intelligence agency." Compl., ECF No. 1 at 9 n.1.

[7] Mr. Akhmetshin's Complaint incorporates by reference the NBC
News and AP articles in Mr. Browder's tweets. *See Klayman v.
Obama*, 125 F. Supp. 3d 67, 74 n.7 (D.D.C. 2015) ("The Court may
consider [a news] article on a motion to dismiss because it is
incorporated by reference into the Complaint."). The Court takes
judicial notice of the existence of those news articles. *See
Sandza v. Barclays Bank PLC*, 151 F. Supp. 3d 94, 113 (D.D.C.
2015) (citing *Wash. Post v. Robinson*, 935 F.2d 282, 291 (D.C.
Cir. 1991)).

change US sanctions policy crucial to Putin." *Id.*[8] According to

Mr. Akhmetshin, "[Mr.] Browder intended his [third] statement to

be interpreted as a statement of fact that [Mr.] Akhmetshin was

'a member of Putin's secret police.'" Compl., ECF No. 1 at 9 ¶

50. Finally, Mr. Browder made the fourth statement in an

interview on *CBS This Morning* on July 18, 2017. *Id.* at 9 ¶ 51.

Mr. Browder stated that "[Natalia Veselnitskaya] then hires this

guy Rinat Akhmetshin, who is a – by all accounts, some kind of

**shady former Soviet spy, current spy operator** in Washington."

*Id.* (emphasis added). Mr. Browder also stated that "[Mr.

Akhmetshin] then organizes a full-on lobbying campaign hiring

the top lobbyists, the top law firms, the top PR firms, to try

to get rid of this Magnitsky Act." Def.'s Mot. to Dismiss, ECF

No. 20 at 24 (quoting Ex. D, Shube Decl., ECF No. 20-8 at 1).

---

[8] The *Business Insider* article, in pertinent part, states:
NBC News initially declined to name Akhmetshin as the
lobbyist who attended with [Natalia] Veselnitskaya. But
William Browder, the founder of the investment advisory
firm Hermitage Capital who spearheaded the Magnitsky
Act, told Business Insider that there was "only one
person" who fit the profile described by NBC News.
Browder added that Akhmetshin's presence was highly
significant. "In the world of Russian intelligence,
there is no such thing as a 'former intelligence
officer,'" he said. "So in my opinion you had a member
of Putin's secret police directly meeting with the son
of the future next president of the United States asking
to change US sanctions policy crucial to Putin."
Ex. C, Shube Decl., ECF No. 20-7 at 2-3.

### C. Procedural History

On July 12, 2018, Mr. Akhmetshin filed this lawsuit, asserting that Mr. Browder's four statements were false and defamatory. Compl., ECF No. 1 at 9 ¶ 52. Mr. Akhmetshin denies being a "Russian GRU officer, intelligence asset, or spy for the Russian Federation or former Soviet Union." *Id.* at 9 ¶ 53. And Mr. Browder had "no good faith basis" for stating those falsehoods, and he made "no effort to verify the truth of those allegations . . . ." *Id.* at 10 ¶ 58. Mr. Akhmetshin claims that "[Mr.] Browder's defamatory statements against [him] were clearly designed to undermine [his] credibility as a lobbyist in Washington, D.C." *Id.* at 11 ¶ 66. As a result, Mr. Akhmetshin asserts that he has been labeled as a spy, and he has struggled to obtain work. *Id.* at 12 ¶¶ 71-72. Thereafter, Mr. Browder filed a motion to dismiss pursuant to Rules 12(b)(2) and 12(b)(6).[9] *See* Def.'s Mot. to Dismiss, ECF No. 20. Mr. Akhmetshin

---

[9] Mr. Browder moves separately for dismissal under the Anti-SLAPP Act, D.C. Code § 16-5502(a). *See* Def.'s Special Mot. to Dismiss, ECF No. 19. Mr. Akhmetshin filed an opposition brief, *see* Pl.'s Opp'n, ECF No. 23, and Mr. Browder filed a reply brief, *see* Def.'s Reply, ECF No. 24. The United States Court of Appeals for the District of Columbia Circuit ("D.C. Circuit") has addressed the issue of "whether a federal court exercising diversity jurisdiction may apply the D.C. Anti-SLAPP Act's special motion to dismiss provision." *Abbas v. Foreign Policy Grp., LLC*, 783 F.3d 1328, 1333 (D.C. Cir. 2015). The D.C. Circuit ruled that "[t]he answer is no. Federal Rules of Civil Procedure 12 and 56 establish the standards for granting pre-trial judgment to defendants in cases in federal court. A federal court *must* apply those Federal Rules instead of the D.C. Anti-SLAPP Act's special

filed the opposition brief, *see* Pl.'s Opp'n, ECF No. 22, and Mr. Browder filed the reply brief, *see* Reply, ECF No. 26.[10] The briefing is now complete, and the motions are ripe and ready for the Court's adjudication.

## II. Legal Standard

Under Rule 12(b)(2), a defendant can move to dismiss a lawsuit if the court lacks personal jurisdiction over the defendant. Fed. R. Civ. P. 12(b)(2). A plaintiff bears the burden of making a *prima facie* showing that the court has personal jurisdiction over a defendant. *Kurtz v. United States*, 779 F. Supp. 2d 50, 51 (D.D.C. 2011). "A plaintiff must plead specific facts providing a basis for personal jurisdiction[,]" *id.*, and a plaintiff cannot rely on merely conclusory

---

motion to dismiss provision." *Id.* (emphasis added); *see also Fridman v. Bean LLC*, No. CV 17-2041 (RJL), 2019 WL 231751, at *2 (D.D.C. Jan. 15, 2019) ("*Abbas* remains the controlling law in our Circuit."). Accordingly, this Court **DENIES** Mr. Browder's motion to dismiss under the Anti-SLAPP Act because "[t]he Court continues to adhere to [the] view [in this Circuit] that controlling precedent precludes the application of D.C.'s Anti-SLAPP Act in federal court." *Cockrum v. Donald J. Trump for President, Inc.*, 319 F. Supp. 3d 158, 165 n.2 (D.D.C. 2018) (collecting cases).

[10] On February 14, 2019, Mr. Browder filed redacted versions of the reply brief, the accompanying declaration, and an attachment to the declaration on the docket without the Court's permission. *See* Min. Order of March 15, 2019. On March 12, 2019, the Court issued a Sealed Minute Order that: (1) granted in part Mr. Browder's motion to file under seal certain book sales, ECF No. 25; and (2) granted Mr. Browder's request to file under seal the attachment to the declaration with the book sales. *See* Min. Order of March 12, 2019.

allegations, *Buesgens v. Brown*, 567 F. Supp. 2d 26, 31 (D.D.C. 2008). Accordingly, to establish personal jurisdiction over a defendant, the "plaintiff must allege specific acts connecting [the] defendant with the forum[.]" *Second Amendment Found. v. U.S. Conf. of Mayors*, 274 F.3d 521, 524 (D.C. Cir. 2001) (quoting *First Chicago Int'l v. United Exch. Co.*, 836 F.2d 1375, 1378 (D.C. Cir. 1988)).

On a motion to dismiss for lack of personal jurisdiction, a court may consider materials outside of the pleadings. *Thompson Hine LLP v. Smoking Everywhere Inc.*, 840 F. Supp. 2d 138, 141 (D.D.C. 2012), *aff'd sub nom. Thompson Hine, LLP v. Taieb*, 734 F.3d 1187 (D.C. Cir. 2013). "When considering whether personal jurisdiction exists, the Court need not treat all of plaintiff's jurisdictional allegations as true." *Buesgens*, 567 F. Supp. 2d at 31. "Instead, the Court may receive and weigh affidavits and any other relevant matter to assist it in determining the jurisdictional facts." *Id.* (citation and internal quotation marks omitted). Any factual discrepancies should be resolved in favor of the plaintiff. *Id.* The court "need not accept inferences drawn by plaintiffs if such inferences are unsupported by the facts[.]" *Livnat v. Palestinian Auth.*, 851 F.3d 45, 56-57 (D.C. Cir. 2017) (citation omitted).[11]

---

[11] Mr. Browder moves to dismiss for failure to state a claim pursuant to Rule 12(b)(6). *See* Def.'s Mot. to Dismiss, ECF No.

### III. Analysis

As an initial matter, this Court must determine whether to exercise personal jurisdiction over Mr. Browder, a non-resident of the District of Columbia, by reference to the District of Columbia's long-arm statute and the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *United States v. Ferrara*, 54 F.3d 825, 828 (D.C. Cir. 1995); *see also Bradley v. DeWine*, 55 F. Supp. 3d 31, 39 (D.D.C. 2014) ("[T]he defendant must qualify for either general or specific jurisdiction under the relevant District of Columbia statutes."). "Under the District of Columbia long-arm statute, a plaintiff has the burden of establishing a factual basis for the exercise of personal jurisdiction over the defendant." *Cellutech, Inc. v. Centennial Cellular Corp.*, 871 F. Supp. 46, 48 (D.D.C. 1994). For the reasons explained below, the Court concludes that the District of Columbia's long-arm statute does not provide a basis for this Court to exercise specific or general jurisdiction over Mr. Browder, and that Mr. Akhmetshin

---

20 at 1. The Court only addresses Mr. Browder's motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2). The Court does not reach Mr. Browder's Rule 12(b)(6) arguments. *See App Dynamic ehf v. Vignisson*, 87 F. Supp. 3d 322, 324 (D.D.C. 2015) ("Defendant raises three different grounds for jettisoning the case: [1] lack of personal jurisdiction, [2] lack of subject-matter jurisdiction, and [3] failure to state a claim. The Court need look no farther than the first to grant the Motion.").

is not entitled to jurisdictional discovery.

**A. The Court Lacks Specific Jurisdiction Over Mr. Browder**

The Court first considers whether it may exercise specific jurisdiction over Mr. Browder. Mr. Akhmetshin argues that this Court has specific jurisdiction over Mr. Browder under the relevant provision of the District of Columbia's long-arm statute because: (1) Mr. Browder has "numerous contacts" with the District; (2) he has appeared in the District on "numerous occasions to tell his version of events relating to the Hermitage Tax Refund Scheme"; and (3) he has appeared in the District "on many other occasions" to promote his book. Pl.'s Opp'n, ECF No. 22 at 22. Mr. Browder contends that the basis for his contacts in the District—"engaging in lobbying activities in the District, including his appearances in the District to testify before Congress and other United States government agencies[,]" Def.'s Mot. to Dismiss, ECF No. 20 at 29—are precluded by the "government contacts" doctrine, *id.* at 30. Mr. Browder argues that Mr. Akhmetshin fails to allege that his appearances in the District were "more than sporadic or occasional[.]" *Id.* at 33. In response to Mr. Akhmetshin's argument that the *Red Notice* demonstrates that Mr. Browder was regularly soliciting business or deriving substantial revenue from the District, Mr. Browder points out that the "*Red Notice* is inseparable from Mr. Browder's advocacy relating to the

Magnitsky Act, as Plaintiff effectively concedes" and his promotional activities for the book fall under the "government contacts" exception. Def.'s Reply, ECF No. 26 at 14 (citing Pl.'s Opp'n, ECF No. 22 at 11-12). Before addressing the parties' arguments in turn, the Court will explain the relevant provision of the District of Columbia's long-arm statute.

Subsection (a)(4) of the District of Columbia's long-arm statute provides:

> A District of Columbia Court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a claim for relief arising from the person's . . . causing tortious injury in the District of Columbia by an act or omission outside the District of Columbia if he [1] regularly does or solicits business, [2] engages in any other persistent course of conduct, or [3] derives substantial revenue from goods used or consumed, or services rendered, in the District of Columbia[.]

D.C. Code § 13-423(a)(4).[12] This subsection "provides specific

---

[12] Mr. Browder argues that his alleged activities—his appearances on television and radio programs as well as his attendance at think tank and non-governmental organization ("NGO") events in the District—fail to establish jurisdiction under D.C. Code § 13-423 (a)(1) and (3). Def.'s Mot. to Dismiss, ECF No. 20 at 32. Because Mr. Akhmetshin did not respond to that argument in his opposition brief, *see generally* Pl.'s Opp'n, ECF No. 22, the Court deems it as conceded. *See Hopkins v. Women's Div., Gen. Bd. of Global Ministries*, 284 F. Supp. 2d 15, 25 (D.D.C. 2003) ("It is well understood in this Circuit that when a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded."), *aff'd*, 98 F. App'x 8 (D.C. Cir. 2004).

jurisdiction over non-resident defendants whose tortious acts outside the District of Columbia cause injury within the District if [Mr. Browder] satisf[ies] one of the three enumerated 'plus factors'[.]" *Lewy v. S. Poverty Law Ctr., Inc.*, 723 F. Supp. 2d 116, 123 (D.D.C. 2010); *see also Etchebarne-Bourdin v. Radice*, 982 A.2d 752, 755 (D.C. 2009) (explaining that the "plus factors" are "required for the purpose of ensuring that exercising jurisdiction over a defendant where the claim for relief is based on conduct outside the forum comports with due process"). The D.C. Circuit has made clear that "[t]he 'something more' or 'plus factor' does not itself supply the basis for the assertion of [personal] jurisdiction, but it does serve to filter out cases in which the inforum impact is an isolated event and the defendant otherwise has no, or scant, affiliations with the forum." *Crane v. Carr*, 814 F.2d 758, 763 (D.C. Cir. 1987).

Neither party disputes that Mr. Akhmetshin's Complaint fails to allege that Mr. Browder made the four challenged statements in the District. *See, e.g.* Compl., ECF No. 1 at 2 ¶ 12; Def.'s Mot. to Dismiss, ECF No. 20 at 28-29; Pl.'s Opp'n, ECF No. 22 at 21. Mr. Akhmetshin argues that he satisfies the first requirement of subsection (a)(4)—"causing tortious injury in the District of Columbia by an *act* or omission *outside the District of Columbia*[,]" D.C. Code § 13-423(a)(4) (emphasis

added)—because Mr. Browder's statements constitute acts outside
of the District causing tortious injury to Mr. Akhmetshin within
the District where he resides and works. *See* Pl.'s Opp'n, ECF
No. 22 at 21. While Mr. Akhmetshin meets this first hurdle and
there is no dispute that the alleged defamatory statements were
made outside of the District, subsection (a)(4) "calls for
something more." *Crane*, 814 F.2d at 763; *see also* D.C. Code §
13-423(a)(4). Mr. Akhmetshin must demonstrate that Mr. Browder:
(1) regularly does or solicits business; (2) engages in any
other persistent course of conduct; or (3) derives substantial
revenue from goods used or consumed, or services rendered, in
the District of Columbia. *See* D.C. Code § 13-423(a)(4); *see also*
*Bigelow v. Garrett*, 299 F. Supp. 3d 34, 47 (D.D.C. 2018)
(plaintiff bears the burden of showing either general or
specific jurisdiction). To meet the first and third prongs, Mr.
Akhmetshin points to Mr. Browder's appearances in the District
to promote his book. *See* Compl., ECF No. 1 at 11 ¶ 60; *see also*
Pl.'s Opp'n, ECF No. 22 at 22-23, 27. Mr. Akhmetshin asserts
that Mr. Browder "derived substantial revenue from this
District, including but not limited to the promotion and sale of
his book and frequent media appearances." Pl.'s Opp'n, ECF No.
22 at 27.

It is undisputed that Mr. Browder traveled to the District
on at least three separate occasions to promote his book in

2015. *See id*. Mr. Browder submits a declaration from the director of Hermitage Capital Management (UK) Limited attesting that Mr. Browder himself did not derive any revenue from the book's sales in the District because the book generated revenue for the publisher, Simon & Schuster, Inc., and the Hermitage corporate entities. Def.'s Reply, ECF No. 26 at 15; *see also* Decl. of Ivan Cherkasov ("Cherkasov Decl."), ECF No. 26-1 at 1 ¶ 5 (stating that "Simon & Schuster, Inc. and Hermitage Entertainment Limited are the entities entitled to earn revenues as a result of the sales of *Red Notice*"). Indeed, the declarant avers that Mr. Browder does not personally own any property rights in the book, and that the publisher controls the book sales and advertising as a result of a book deal. Cherkasov Decl., ECF No. 26-1 at 1 ¶¶ 3-4.

Mr. Browder argues—and the Court agrees—that "this [C]ourt may not exercise personal jurisdiction over [him] based on revenues earned by Hermitage corporate entities." Def.'s Reply, ECF No. 26 at 15 (citing *Wiggins v. Equifax Inc*., 853 F. Supp. 500, 503 (D.D.C. 1994)); *see also McFarlane v. Esquire Magazine*, 74 F.3d 1296, 1300 (D.C. Cir. 1996) ("The writer is not the publisher; [the writer's] contacts must be assessed separately."). "[A]s a general rule, courts cannot exert jurisdiction over individual corporate officers or employees 'just because the court has jurisdiction over the

corporation[.]'" *Kopff v. Battaglia*, 425 F. Supp. 2d 76, 84

(D.D.C. 2006) (quoting *Flocco v. State Farm Mut. Auto. Ins. Co.*,

752 A.2d 147, 162 (D.C. 2000)). Mr. Akhmetshin does not allege

that this Court has jurisdiction over the Hermitage corporate

entities. *See generally* Compl., ECF No. 1. Neither does Mr.

Akhmetshin allege any facts as to Mr. Browder's role in the

Hermitage corporate entities that would persuade this Court to

apply the requirement in *Wiggins* that "[p]ersonal jurisdiction

over the employees or officers of a corporation in their

individual capacities . . . be based on their personal contacts

with the forum and not their acts and contacts carried out

solely in a corporate capacity." 853 F. Supp. at 503.

The record does not support Mr. Akhmetshin's conclusory

allegations that Mr. Browder was regularly doing or soliciting

business in the District or deriving "substantial" revenue from

the District through the promotion and sale of the book.[13] *See*

*Parisi v. Sinclair*, 806 F. Supp. 2d 93, 98 (D.D.C. 2011)

(granting motion to dismiss for lack of personal jurisdiction

---

[13] The Court rejects Mr. Akhmetshin's argument that evidence of
the book sales in this District will establish the "substantial
revenue" prong. *See* Pl.'s Opp'n, ECF No. 22 at 31 n.14. Having
reviewed the sealed and redacted documents, *see, e.g.*, Def.'s
Sealed Reply, ECF No. 32 at 15-16, 32-33, the financial
information with Hermitage Entertainment Limited's total
revenues does not support Mr. Akhmetshin's allegations that Mr.
Browder derives "substantial" revenue from the District in the
form of book sales. *See* D.C. Code § 13-423(a)(4).

where "plaintiffs' conclusory allegations and lack of factual evidence [did] not satisfy the statutory requirements" that the defendant derived "substantial" revenue from the District). The same is true for Mr. Akhmetshin's allegations with respect to Mr. Browder's "frequent media appearances." Pl.'s Opp'n, ECF No. 22 at 27. Mr. Akhmetshin makes bare assertions that Mr. Browder conducted or solicited business in the District and that Mr. Browder derived revenue from the District through his media appearances. *See id.*; *see also Atlantigas Corp. v. Nisource, Inc.*, 290 F. Supp. 2d 34, 42 (D.D.C. 2003) ("[P]laintiff must allege specific facts on which personal jurisdiction can be based; it cannot rely on conclusory allegations."). The Court therefore finds that Mr. Akhmetshin's allegations fail to show that Mr. Browder conducted or solicited business in the District or that he derived any revenue from the District.

The question remains whether Mr. Akhmetshin has shown that Mr. Browder engaged in "any other persistent course of conduct" in the District. D.C. Code § 13-423(a)(4). The core of Mr. Akhmetshin's allegations is that Mr. Browder's persistent course of conduct in the District forms the basis for specific jurisdiction under subsection (a)(4). *See* Pl.'s Opp'n, ECF No. 22 at 23, 27-30; *see also* Compl., ECF No. 1 at 4 ¶ 23, 10-11 ¶ 59, 11 ¶ 61. The Complaint asserts that Mr. Browder provided testimony to a federal commission and committees in the United

States House of Representatives and the Senate between 2009 and 2017. Compl., ECF No. 1 at 10-11 ¶ 59(a)-(3). Mr. Akhmetshin points out that "[Mr.] Browder has continued to travel to this District well after the passage of the Magnitsky Act – ostensibly for purposes of lobbying the U.S. government." Pl.'s Opp'n, ECF No. 22 at 23; *see also* Decl. of Michael Tremonte ("Tremonte Decl."), ECF No. 22-1 at 1 ¶ 4. Mr. Akhmetshin argues that Mr. Browder's twelve media appearances in the District show that he has engaged in a persistent course of conduct in the District. *See* Pl.'s Opp'n, ECF No. 22 at 27-28. Mr. Akhmetshin cites *Blumenthal v. Drudge*, 992 F. Supp. 44, 57 (D.D.C. 1998), but his reliance on that case is misplaced. *See id.* at 27.

In *Blumenthal*, the court held that it had specific jurisdiction under D.C. Code § 13-423(a)(4) over a California resident who had allegedly published defamatory statements about two White House employees on the "Drudge Report," a gossip website. *Id.* at 57. In that case, the non-resident defendant created the Drudge Report and traveled to the District "once for a C-SPAN interview that was for the express purpose of promoting the Drudge Report." *Id.* at 54. The court concluded that the "circumstances presented by [that] case warrant[ed] the exercise of personal jurisdiction" for six reasons:

> (1) the interactivity of the web site between the defendant Drudge and District residents;
> (2) the regular distribution of the Drudge

> Report via AOL, e-mail and the world wide web
> to District residents; (3) Drudge's
> solicitation and receipt of contributions from
> District residents; (4) the availability of
> the web site to District residents 24 hours a
> day; (5) defendant Drudge's interview with C-
> SPAN; and (6) defendant Drudge's contacts with
> District residents who provide gossip for the
> Drudge Report.

*Id.* at 57. Here, Mr. Akhmetshin argues that the Court should

exercise specific jurisdiction over Mr. Browder because Mr.

Browder's "*many* media appearances" in the District present a

stronger case than the non-resident in *Blumenthal* who sat for

one interview in the District. Pl.'s Opp'n, ECF No. 22 at 27-28

(emphasis in original). But Mr. Browder argues that *Blumenthal*

is distinguishable from this case because the non-resident

defendant in *Blumenthal* had contacts in the District that were

commercial in nature, whereas Mr. Browder's appearances in the

District were to "advance his lobbying and advocacy

activities[.]" Def.'s Reply, ECF No. 26 at 18. The Court agrees.

Unlike in this case, the non-resident defendant in *Blumenthal*

did not have contacts with the government for the purpose of

lobbying members of Congress or testifying before Congress. *See*

992 F. Supp. at 57.

In this case, Mr. Browder invokes the "government contacts"

exception to the District of Columbia's long-arm statute. Def.'s

Mot. to Dismiss, ECF No. 20 at 27-28. Under that exception, the

"mere entry [into the District] by non-residents for the purpose

of contacting federal government agencies cannot serve as a basis for in personam jurisdiction[.]" *Rose v. Silver*, 394 A.2d 1368, 1370 (D.C. 1978); *see also Dooley v. United Techs. Corp.*, 803 F. Supp. 428, 434 (D.D.C. 1992) ("The government contacts exception precludes the assertion of personal jurisdiction over a non-resident whose only contacts with the District of Columbia are for purposes of dealing with a federal agency or Congress."). This "exception is intended to (1) protect the right of citizens to freely access and petition the government and (2) prevent the District of Columbia from becoming a national judicial center based solely upon parties' contacts with the federal government." *Lewy*, 723 F. Supp. 2d at 126 (citing *Envtl. Research Int'l v. Lockwood Greene Eng'rs*, 355 A.2d 808, 813 (D.C. 1976)). Mr. Browder argues that his activities of lobbying for federal legislation and testifying before legislative bodies cannot confer specific jurisdiction over him because such federal government contacts fall squarely within the "government contacts" exception. *See* Def.'s Mot. to Dismiss, ECF No. 20 at 27-28, 30-31. Mr. Akhmetshin responds that this "judicially-crafted exception" does not apply to Mr. Browder, Pl.'s Opp'n, ECF No. 22 at 23, because: (1) the "government contacts" exception is a doctrine rooted in the First Amendment; and (2) Mr. Browder has no First Amendment right to petition the U.S. government given his status as a non-

U.S. citizen, *id.* at 24-25. Mr. Akhmetshin points out that Mr. Browder fails to cite binding authority that applies this exception to "a nonresident alien's government contacts with the U.S. government." *Id.* at 26.

The Court is not persuaded by Mr. Akhmetshin's arguments. Mr. Akhmetshin correctly notes that "'[t]he scope of the government contacts exception is unsettled' in some respects[.]" Pl.'s Opp'n, ECF No. 22 at 24 (quoting *Companhia Brasileira Carbureto de Calcio v. Applied Indus. Materials Corp.*, 640 F.3d 369, 371 (D.C. Cir. 2011)); *see also Shaheen v. Smith*, 994 F. Supp. 2d 77, 85 (D.D.C. 2013) (discussing the "confusion in the lower[ ] courts as to the precise limit of the doctrine").[14] Mr. Browder does not disagree that the scope is unresolved. *See* Def.'s Reply, ECF No. 26 at 11. That being said, "[i]t is by no means established that the government contacts rule is in fact limited to activities that implicate the First Amendment." *Robo-Team NA, Inc. v. Endeavor Robotics*, 313 F. Supp. 3d 19, 25 (D.D.C. 2018). Furthermore, the D.C. Circuit and courts in this

---

[14] The Court observes that there is an exception to the "government-contacts" exception:  fraudulent petitions to the government. *See Companhia Brasileira Carbureto De Calcio v. Applied Indus. Materials Corp.*, 35 A.3d 1127, 1130-34 (D.C. 2012); *see also* Pl.'s Opp'n, ECF No. 22 at 24-25. While Mr. Akhmetshin's opposition brief mentions this exception, the Court need not address this narrow exception because Mr. Akhmetshin does not argue that it applies here. *See* Pl.'s Opp'n, ECF No. 22 at 24-25.

jurisdiction have applied the "government contacts" exception to non-resident aliens. *See, e.g.*, *Stabilisierungsfonds fur Wein v. Kaiser Stuhl Wine Distribs. Pty. Ltd.*, 647 F.2d 200, 205, n.11 (D.C. Cir. 1981) (noting that "[w]e do not rest any part of our decision [with regards to personal jurisdiction] on the Australians' contacts with federal offices" in light of the "government contacts" exception); *LG Display Co. v. Obayashi Seikou Co.*, 919 F. Supp. 2d 17, 26-27 (D.D.C. 2013) (holding that a Japanese citizen's frequent appearances before the U.S. Patent and Trademark Office did not constitute engaging in a "persistent course of conduct" under D.C. Code § 13-423(a)(4)).

Mr. Browder's "contacts with government agencies do not enter the jurisdictional calculus." *LG Display Co.*, 919 F. Supp. 2d at 27. Mr. Browder argues—and the Court agrees—that his contacts with the District for "purposes of lobbying or advocating for justice for [Mr.] Magnitsky, including the Magnitsky Act" are excluded from the jurisdictional analysis under the "government contacts" exception.[15] Def.'s Reply, ECF

---

[15] The Court agrees with Mr. Browder that the "government contacts" exception applies to his activities concerning the book because those activities were closely related to his advocacy of the Magnitsky Act and his lobbying efforts. *See* Def.'s Reply, ECF No. 26 at 14; *see also* Pl.'s Opp'n, ECF No. 22 at 11-12, 23. Indeed, Mr. Akhmetshin alleges that Mr. Browder published the book to purportedly "tell the truth about the Hermitage Tax Refund Scheme and the Magnitsky affair[,]" Compl., ECF No. 1 at 11 ¶ 60, and Mr. Akhmetshin points to Mr. Browder's appearances at book events in the District in 2015, *see* Pl.'s

No. 26 at 13. As such, the Complaint's list of Mr. Browder's
testimony before the federal commission and Congress from 2009
to 2017 does not confer specific jurisdiction over Mr. Browder.
*See* Compl., ECF No. 1 at 10-11 ¶ 59(a)-(e). Neither does Mr.
Akhmetshin's list of Mr. Browder's media appearances in the
District between 2012 and 2018 form a basis for specific
jurisdiction, *see* Pl.'s Opp'n, ECF No. 22 at 28, because the
"government contacts" exception applies to a non-resident
defendant who "concerns [himself] with federal legislation,
regulations, and policies" in an effort to "advance [the non-
resident defendant's federal] policy agenda," *United
Therapeutics Corp. v. Vanderbilt Univ.*, 278 F. Supp. 3d 407, 418
(D.D.C. 2017).

One of Mr. Browder's media interviews was related to his
testimony before the United States Helsinki Commission, and the
other eleven interviews concerned the Magnitsky Act. *See* Def.'s
Reply, ECF No. 26 at 16-17.[16] While it is true that some of those

---

Opp'n, ECF No. 22 at 22, 27. On the same day that Mr. Browder
appeared at a book event in the District, *see* Pl.'s Opp'n, ECF
No. 22 at 27, Mr. Browder testified before a subcommittee of the
House Committee on Foreign Affairs, *see* Compl., ECF No. 1 at 10
¶ 59(c).

[16] The Court observes that "[t]he Commission on Security and
Cooperation in Europe, also known as the U.S. Helsinki
Commission, is an independent commission of the U.S. Federal
Government." Comm'n on Sec. & Cooperation in Europe, *About the
Commission on Security and Cooperation in Europe*,
https://www.csce.gov/about-commission-security-and-cooperation-
europe (last visited Sept. 10, 2019).

interviews took place after the enactment of the Magnitsky Act, *see id.*, it is also true that Mr. Akhmetshin embarked on a lobbying campaign in the District to remove Mr. Magnitsky's name from the Magnitsky Act, *see* Compl., ECF No. 1 at 6 ¶ 34; *see also* Hermitage Letter, Ex. E, ECF No. 20-9 at 2 (stating "[t]here is an ongoing lobbying campaign to repeal the Magnitsky Act" and "rewrite the history of the Magnitsky story"). The Court therefore finds that Mr. Browder's post-Magnitsky Act contacts were intended to challenge any efforts to repeal that federal law. *See United Therapeutics Corp.*, 278 F. Supp. 3d at 418.

Finally, Mr. Akhmetshin points out that Mr. Browder has traveled to the District on several occasions for certain engagements (*i.e.* dinner, reception, meetings, private event, and funeral) between 2009 and 2018. *See* Pl.'s Opp'n, ECF No. 22 at 29-30. Mr. Akhmetshin notes that Mr. Browder retained a law firm with an office in the District, Mr. Browder sent two demand letters to NBC Universal regarding a published article, and Mr. Browder stated in a telephone conversation the he would pursue legal action against a museum located in the District. *See id.* at 29. Courts in this jurisdiction have held that such contacts do not warrant the exercise of specific personal jurisdiction over a non-resident defendant. *See, e.g.*, *Son v. Kim*, No. 05-2318 (JR), 2007 WL 950085, at *2 (D.D.C. Mar. 28, 2007)

("Maintaining non-commercial contact with old friends and
supporters is not a 'persistent course of conduct.'"); *Burman v.
Phoenix Worldwide Indus., Inc.*, 437 F. Supp. 2d 142, 154 (D.D.C.
2006) (concluding that defendant's "telephone calls to the
District of Columbia [did] not provide a proper basis for th[e]
[c]ourt to exercise personal jurisdiction"); *Staton v. Looney*,
704 F. Supp. 303, 305 (D.D.C. 1989) (declining to exercise
personal jurisdiction over the defendants because they were not
"subject to [the] [c]ourt's jurisdiction solely by virtue of
having retained a lawyer for the purpose of filing the present
motion to dismiss").

Mr. Akhmetshin has failed to demonstrate that Mr. Browder's
other travel to the District was not merely sporadic or
occasional. *See Lewy*, 723 F. Supp. 2d at 124 ("Occasional travel
to the District is also insufficient" to constitute a
"persistent course of conduct"); *see also Am. Ass'n of Cruise
Passengers v. Cunard Line, Ltd.*, 691 F. Supp. 379, 381 (D.D.C.
1987) (finding that plaintiff failed to meet its burden of
establishing a basis for personal jurisdiction over defendant
under the long-arm statute where the contacts were, *inter alia*,
"entirely of sporadic attendance at trade association meetings
held in the District"). Accordingly, the Court will not exercise
personal jurisdiction over Mr. Browder under D.C. Code § 13-

423(a)(4).[17]

### B. The Court Lacks General Jurisdiction Over Mr. Browder

The Court next considers whether Mr. Akhmetshin has met his burden of demonstrating that this Court has general jurisdiction over Mr. Browder. *See West v. Holder*, 60 F. Supp. 3d 190, 193-94 (D.D.C. 2014) (citing D.C. Code § 13-422), *aff'd sub nom. West v. Lynch*, 845 F.3d 1228 (D.C. Cir. 2017). Under Section 13-422 of the D.C. Code, "[a] District of Columbia court may exercise personal jurisdiction over a person domiciled in, organized under the laws of, or maintaining his or its principal place of business in, the District of Columbia as to any claim for relief." D.C. Code § 13-422. To establish general jurisdiction, a plaintiff must demonstrate that a defendant's contacts with the forum state are "so constant and pervasive as to render [it] essentially at home in the forum State". *Daimler AG v. Bauman*,

---

[17] The Court takes judicial notice of a defamation lawsuit filed against Mr. Browder in the United Kingdom, *see Karpov v. Browder* [2013] EWHC 3071 (QB) ¶¶ 138-46, but the Court declines to take judicial notice of the outcome of that proceeding. *See TMF Tr. Ltd. v. M/T Megacore Philomena*, No. CV 17-09010 AGR, 2018 WL 6266593, at *2 (C.D. Cal. Oct. 30, 2018) ("[T]he court may take judicial notice that the documents were filed in a foreign proceeding[,]" but the court will not "take judicial notice of the facts and outcomes in those proceedings."). Mr. Akhmetshin's argument—that this Court should exercise personal jurisdiction over Mr. Browder because "[i]f [Mr.] Browder cannot be sued here, where [Mr.] Akhmetshin lives, then he likely cannot be sued anywhere[,]" Pl.'s Opp'n, ECF No. 22 at 32—is unavailing. Mr. Akhmetshin cites no D.C. Circuit precedent to support his position.

571 U.S. 117, 122 (2014) (citation and internal quotation marks omitted). "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile[.]" *Id.* at 137 (citation and internal quotation marks omitted).

Here, Mr. Akhmetshin does not allege that Mr. Browder is domiciled in the District. *See id.* To the contrary, Mr. Akhmetshin alleges that Mr. Browder resides in the United Kingdom. Compl., ECF No. 1 at 2 ¶ 10; *see also* Pl.'s Opp'n, ECF No. 22 at 25 ("As [Mr.] Browder himself has explained, Britain is his 'home' because he prefers the British legal system."). The Court therefore finds that Mr. Browder "is not domiciled in the District of Columbia, so the Court may not exercise general jurisdiction over him under the relevant D.C. statute." *West*, 60 F. Supp. 3d at 193-94 (citing D.C. Code § 13-422); *see also Gomez v. Aragon*, 705 F. Supp. 2d 21, 24 (D.D.C. 2010) ("There is no personal jurisdiction over the defendants in the District of Columbia based on their domicile, as they are all 'citizens of the State of New Mexico.'" (citation omitted)).

"A defendant's contacts within the District under Section 13-422 must be 'continuous and systematic' in order for the defendant to be forced to defend a suit arising out of any subject matter unrelated to the defendant's activities within the District." *Bigelow*, 299 F. Supp. 3d at 43 (citation

omitted). Because Mr. Browder's contacts with the District arise
out of his lobbying, advocacy of the Magnitsky Act, and
Congressional testimony, those activities are exempted for
personal jurisdiction purposes under the "government contacts"
exception. *See id.*; *see also Cellutech, Inc.*, 871 F. Supp. at 50
(holding that the "government contacts" exception "precludes the
assertion of personal jurisdiction over a nonresident whose only
contacts with the District of Columbia are for purposes of
dealing with a federal agency or Congress" (citation omitted)).
The Court therefore finds that Mr. Browder's contacts are not
"continuous and systemic" to warrant the exercise of general
jurisdiction under D.C. Code § 13-422. Accordingly, the Court
**GRANTS** Mr. Browder's motion to dismiss for lack of personal
jurisdiction.

   **C. The Court Denies Mr. Akhmetshin's Request for Discovery**

   Mr. Akhmetshin requests limited jurisdictional discovery
"[i]f the Court remains unconvinced that [Mr.] Browder's
contacts with this District satisfy § 13-423(a)(4)[.]" Pl.'s
Opp'n, ECF No. 22 at 31. Mr. Browder argues that this Court
should reject the request for jurisdictional discovery because
"[Mr. Akhmetshin] has not established that discovery into Mr.
Browder's travels to D.C. will 'enable' him to show that the
Court has jurisdiction over Mr. Browder." Def.'s Reply, ECF No.
26 at 19.

"It is well established that the 'district court has broad discretion in its resolution of [jurisdictional] discovery problems.'" *FC Inv. Grp. LC v. IFX Markets, Ltd.*, 529 F.3d 1087, 1093 (D.C. Cir. 2008) (quoting *Naartex Consulting Corp. v. Watt*, 722 F.2d 779, 788 (D.C. Cir. 1983)). "Although discovery should be granted freely, it can be denied when the plaintiff has failed to present facts that could establish jurisdiction." *Acker v. Royal Merchant Bank & Fin. Co.*, No. 98-392, 1999 WL 1273476, at *5 (D.D.C. Feb. 10, 1999) (citing *Caribbean Broad. Sys., Ltd. v. Cable & Wireless PLC*, 148 F.3d 1080, 1089-90 (D.C. Cir. 1998)). "[I]n order to get jurisdictional discovery a plaintiff must have at least a good faith belief that such discovery will enable it to show that the court has personal jurisdiction over the defendant." *Caribbean Broad.*, 148 F.3d at 1090. "[A] request for jurisdictional discovery cannot be based on mere conjecture or speculation." *FC Inv. Grp.*, 529 F.3d at 1094. "Therefore, a plaintiff must include *some* facts about what additional discovery could produce." *Shaheen v. Smith*, 994 F. Supp. 2d 77, 89 (D.D.C. 2013) (emphasis in original). "Where there is no showing of how jurisdictional discovery would help plaintiff discover anything new, 'it [is] inappropriate to subject [defendants] to the burden and expense of discovery.'" *Atlantigas Corp.*, 290 F. Supp. 2d at 53 (quoting *COMSAT Corp. v. Finshipyards S.A.M.*, 900 F. Supp. 515, 524 n. 4 (D.D.C. 1995)).

To support his request for jurisdictional discovery in this case, Mr. Akhmetshin cites *Pinkett v. Dr. Leonard's Healthcare Corp.*, No. CV 18-1656 (JEB), 2018 WL 5464793, at *5 (D.D.C. Oct. 29, 2018). *See* Pl.'s Opp'n, ECF No. 22 at 31. In that case, the court permitted jurisdictional discovery and found that the plaintiff "manifest[ed] a good-faith belief that she [could] demonstrate purposeful availment by discovering the nature and extent of the business that [an out-of-state manufacturer] 'regularly conduct[ed] and solicit[ed]' in the District through its distributors." *Pinkett*, 2018 WL 5464793, at *5 (citation omitted). The court explained that the placement of the manufacturer's products into the stream of commerce could possibly demonstrate that the manufacturer targeted the District in a particular way. *Id.* Mr. Akhmetshin's reliance on *Pinkett* is misplaced.

One of Mr. Akhmetshin's requested areas for discovery is Mr. Browder's book sales in the District. Pl's Opp'n, ECF No. 22 at 31. Mr. Akhmetshin's request for such information is moot, however, because Mr. Akhmetshin has already received information about the book sales. *See* Cherkasov Decl., ECF No. 26-1 at 2 ¶ 6. Nonetheless, the declaration accompanying Mr. Browder's reply brief makes clear that the publisher, rather than Mr. Browder, made "sales decisions" that included "where to sell the book, how many copies each state or store receives, and how the book

is advertised." *Id*. at 1 ¶ 4. Thus, Mr. Akhmetshin has not shown that discovery will reveal the nature and extent of Mr. Browder's efforts to target the District through the book.

With respect to Mr. Akhmetshin's request for discovery about Mr. Browder's personal appearances in the District, Mr. Browder contends that Mr. Akhmetshin cannot show a good faith belief that jurisdictional discovery will enable him to demonstrate that the Court has personal jurisdiction over Mr. Browder because Mr. Browder's contacts are subject to the "government contacts" exception. Def.'s Reply, ECF No. 26 at 19-20. To support his position, Mr. Browder relies on *Savage v. Bioport, Inc*., 460 F. Supp. 2d 55, 63 (D.D.C 2006). *Id.* at 19. In *Savage*, the court held that the defendant's contracts to sell certain vaccines to the United States Department of Defense ("DoD") did not confer personal jurisdiction due to the "government contacts" principle. 460 F. Supp. 2d at 62. The court found that the defendant's "contacts with DoD were made in an attempt to influence government action to purchase [a product]; therefore, its contacts [were] excluded by the government contacts principle from establishing jurisdiction in the District of Columbia." *Id*. The court denied the plaintiff's request for jurisdictional discovery because, *inter alia*, "it [was] implausible that any additional discovery would be sufficient to establish general jurisdiction in the District"

and "the government contacts principle would apply to [the defendant's] other contacts beyond those with DoD." *Id.* at 63 (emphasis added).

Here, Mr. Akhmetshin is in a similar position as the plaintiff in *Savage* who failed to show that discovery would lead to the court exercising personal jurisdiction over the defendant. *See id.* Mr. Akhmetshin has not demonstrated a "good faith belief" that Mr. Browder's personal appearances in the District would establish personal jurisdiction because "the government contacts principle would exclude [them] from the personal jurisdiction calculus." *NBC-USA Hous., Inc. Twenty-Six v. Donovan*, 741 F. Supp. 2d 55, 61 (D.D.C. 2010) (citing *Savage*, 460 F. Supp. 2d at 63). Mr. Akhmetshin's request—to take discovery concerning Mr. Browder's personal appearances in the District, Pl.'s Opp'n, ECF No. 22 at 31—"provide[s] no further allegations as to what specific contacts [he] believe[s] exist, beyond those in the complaint." *Capel v. Capel*, 272 F. Supp. 3d 33, 42 (D.D.C. 2017); *see also Robo-Team NA, Inc.*, 313 F. Supp. 3d at 27 (denying jurisdictional discovery because plaintiff "ha[d] not demonstrated a more than speculative basis for believing that discovery would establish [the court's] jurisdiction over the claims stated in its Complaint."). The Court therefore finds that Mr. Akhmetshin has failed to show that jurisdictional discovery is warranted in this case. *Cf.*

*Atlantigas Corp.*, 290 F. Supp. 2d at 53 (denying plaintiff's jurisdictional discovery request "to confirm that the . . . [d]efendants have customers in the District of Columbia or otherwise 'transact business' in the District of Columbia" because "such generalized predictions are not enough to justify jurisdictional discovery"). Accordingly, the Court **DENIES** Mr. Akhmetshin's request for jurisdictional discovery.[18]

## IV.  Conclusion

For the reasons set forth above, the Court **GRANTS** Mr. Browder's Motion to Dismiss for lack of personal jurisdiction under Rule 12(b)(2), **DENIES** Mr. Browder's Motion to Dismiss under the Anti-SLAPP Act, and **DENIES** Mr. Akhmetshin's request for jurisdictional discovery. The Court **DISMISSES WITHOUT PREJUDICE** this case. A separate Order accompanies this Memorandum Opinion.

**SO ORDERED.**

Signed:  **Emmet G. Sullivan**
         **United States District Judge**
         **September 16, 2019**

---

[18] The Court **DENIES** Mr. Browder's request for the Court to dismiss the case with prejudice. Def.'s Mot. to Dismiss, ECF No. 20 at 1. *See Houlahan v. Brown*, 979 F. Supp. 2d 86, 90 n.5 (D.D.C. 2013) ("Dismissal is without prejudice because the Court did not reach the merits of Plaintiff's claims."). Therefore, the Court **DISMISSES WITHOUT PREJUDICE** this action.