**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

RINAT AKHMETSHIN,

                Plaintiff,

        v.

WILLIAM BROWDER,

                Defendant.

Case No. 1:18-cv-01638-EGS

**REPLY BRIEF IN SUPPORT OF**
**DEFENDANT WILLIAM BROWDER'S MOTION TO DISMISS THE COMPLAINT**
**UNDER D.C. CODE § 16-5502**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................... ii

INTRODUCTION .................................................................................................1

ARGUMENT .......................................................................................................3

I.    Section 16-5504 Applies in Federal Diversity Litigation Where, as Here, It Is Undisputed that "the Claim at Issue Arises from an Act in Furtherance of the Right of Advocacy on Issues of Public Interest," and that Claim Is Dismissed Under Ordinary Federal Pleading Standards. ...................................................................3

    A.    Akhmetshin Does Not Dispute that § 16-5504 Is a Substantive Fee-Shifting Remedy. ................................................................................3

    B.    Akhmetshin Does Not Dispute that No Federal Rule "Answers the Same Question" About a Prevailing Party's Right to Attorney's Fees in These Circumstances. .........................................................4

    C.    Akhmetshin's Appeal to *Abbas* and *Tah* Is Beside the Point. ...........5

    D.    The D.C. Circuit's Holding that § 16-5504 Does Not Apply in Federal Diversity Litigation Depended on an Interpretation of D.C. Law that Has Been Superseded by the D.C. Court of Appeals. .............................................................................................6

    E.    Akhmetshin Is Wrong About the Preemptive Scope of Rule 12. .......7

II.    A Claim is Not "Likely to Succeed on the Merits" Under *American Studies* Whenever It Is Dismissed on a Pre-Answer Motion, Including When It Is Dismissed for Lack of Personal Jurisdiction. ..................................................13

III.    The Court Cannot and Should Not Permit "Targeted Discovery" Under § 16-5502(c)(2). ...................................................................................................14

IV.    Akhmetshin Does Not Dispute that, to the Extent It Applies, § 16-5504 Mandates a Fee Award in this Case. ...............................................................................16

CONCLUSION..................................................................................................16

CERTIFICATE OF SERVICE ..............................................................................17

## TABLE OF AUTHORITIES

**Cases**                                                                                          **Page(s)**

*12 Percent Logistics, Inc. v. Unified Carrier Registration Plan Bd.*,
    282 F. Supp. 3d 190 (D.D.C. 2017) ...................................................................................14

*\*Abbas v. Foreign Policy Grp., LLC*,
    783 F.3d 1328 (D.C. Cir. 2015) ............................................................................. *passim*

*\*American Studies Ass'n v. Bronner*,
    259 A.3d 728 (D.C. 2021) ...................................................................................... *passim*

*Burke v. Air Serv Int'l, Inc.*,
    685 F.3d 1102 (D.C. Cir. 2012). ...................................................................................13

*Burlington N. R.R. Co. v. Woods*,
    480 U.S. 1 (1987) ........................................................................................................7, 9

*Carbone v. Cable News Network, Inc.*,
    910 F.3d 1345 (11th Cir. 2018) ......................................................................................8

*Cohen v. Beneficial Indus. Loan Corp.*,
    337 U.S. 541 (1949) .........................................................................................................9

*Erie R.R. Co. v. Tompkins*,
    304 U.S. 64 (1938) ........................................................................................................12

*Fridman v. Orbis Bus. Intel. Ltd.*,
    229 A.3d 494 (D.C. 2020). ...........................................................................................15

*Henneghan v. District of Columbia*,
    916 F. Supp. 2d 5 (D.D.C. 2013) ................................................................................3, 4

*\*Khan v. Orbis Bus. Intel. Ltd.*,
    292 A.3d 244, (D.C. 2023). .....................................................................................3, 4, 6

*Ortiz v. Fibreboard Corp.*,
    527 U.S. 815 (1999) ......................................................................................................12

*Popkin v. Burwell*,
    172 F. Supp. 3d 161 (D.D.C. 2016) ..............................................................................14

*Randle v. W. Valley City Police Dep't (of Utah)*
    No. 19-CV-1342 (RC), 2019 WL 3304691 (D.D.C. July 23, 2019). .....................................14

*\*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*,
    559 U.S. 393 (2010).................................................................................................9, 11

*Tah v. Glob. Witness Publ'g, Inc.,*
   991 F.3d 231 (D.C. Cir. 2021) ........................................................................... *passim*

*Walker v. Armco Steel Corp.,*
   446 U.S. 740 (1980) ................................................................................................8, 9

**Statutory Provisions and Rules**

28 U.S.C. § 2072(b) ...........................................................................................................12

D.C. Code § 16-5502 ............................................................................................... *passim*

D.C. Code § 16-5504 ............................................................................................... *passim*

D.C. Sup. Ct. R. 7 ......................................................................................................6, 7

Fed. R. Civ. P. 12 .................................................................................................... *passim*

Fed. R. Civ. P. 56 .................................................................................................... *passim*

Fed. R. Civ. P. 7 ........................................................................................................6, 7

**INTRODUCTION**

Akhmetshin does not dispute that (1) his claim is one "arising from an act in furtherance of the right of advocacy on issues of public interest," within the meaning of the D.C. Anti-SLAPP Act; (2) Section 16-5504 is a substantive remedy that must apply in federal diversity litigation unless preempted by a valid federal rule that "answers the same question," or (3) no federal rule answers the question of a prevailing party's entitlement to attorney's fees after winning dismissal of a SLAPP claim. Instead, Akhmetshin's opposition to the application of § 16-5504 to this case rests on a misreading of *Abbas* and *Tah*, as well as an unacceptably broad interpretation of Federal Rule 12's preemptive scope. Neither premise withstands scrutiny.

First, Akhmetshin defends the continued vitality of *Abbas* and *Tah*, reasoning that if those precedents are still valid they control the question here: whether § 16-5504 applies in a case where a motion to dismiss is granted under ordinary federal pleading standards. To be sure, as *Tah* explains, certain portions of § 16-5502 still conflict with the Federal Rules and accordingly may not apply in federal diversity litigation. But it does not follow that *all* of § 16-5502's provisions, and related but separate statutory sections (like § 16-5504) may not apply in federal court. *Abbas* held that § 16-5504 could not apply based upon that panel's assumptions about a then-unresolved question of *D.C.* law—whether and to what extent the various provisions of § 16-5502 and § 16-5504 were inextricably intertwined, binding the fee-shifting remedy of § 16-5504 to heightened procedural standards that cannot apply in federal court. But that is precisely the assumption that *American Studies* has reversed, breaking that linkage as a matter of D.C. law. *Abbas* and *Tah* no longer control that question: *American Studies* does.

Second, Akhmetshin falls back on a vision of Federal Rule 12's preemptive scope that is inconsistent with the Supreme Court's jurisprudence in this area—and with the text of Rule 12 itself. Federal Rule 12 does not preempt the field of consequences that may attach to a pre-answer

dismissal of a party's claim, and nothing in the Rule's text suggests otherwise. Akhmetshin nonetheless contends that Rule 12 is broad enough to require that, if a state wishes to impose a prevailing-party fee-shifting remedy on SLAPP plaintiffs, it must carefully draft that provision such that it does not cross-reference the state's own rules for pre-answer dismissals. But nothing in the Supreme Court's preemption jurisprudence does, or could, support such a result. Instead, the presumption runs the other way: because there is no general federal common law, state law applies in diversity litigation unless it is preempted by a valid federal rule, which must not abridge any substantive right. And, even where a federal rule is valid, it preempts state law only to the extent there is a "direct collision" between the federal and state rule. If there is not—if the state and federal rule can operate alongside one another—federal courts must apply them both. Because that is the situation here, § 16-5504 must apply.

Akhmetshin's remaining arguments are similarly unpersuasive. Anticipating a possible result in this case, Akhmetshin contends that *American Studies*' interpretation of the "likely to succeed on the merits" standard cannot include a dismissal for personal jurisdiction. But it is well established that success on the merits necessarily assumes establishing personal jurisdiction over the defendant, for the simple reason that—as Akhmetshin rightly points out—jurisdiction is a necessary prerequisite to any merits determination. As *American Studies* explains, any dismissal in a pre-answer motion—no matter the reason—necessarily implies that the losing party was not likely to succeed on the merits. Finally, there is no basis for targeted discovery here. Even if that provision of D.C. law could apply in federal court, the D.C. Court of Appeals has held that the standard for targeted discovery is difficult to meet—and Akhmetshin has not even attempted to meet it.

**ARGUMENT**

I.     **Section 16-5504 Applies in Federal Diversity Litigation Where, as Here, It Is Undisputed that "the Claim at Issue Arises from an Act in Furtherance of the Right of Advocacy on Issues of Public Interest," and that Claim Is Dismissed Under Ordinary Federal Pleading Standards.**

Section 16-5504's fee-shifting remedy is a substantive provision of D.C. law that must apply in federal court unless preempted by a valid federal rule. Under *Khan*, § 16-5504 is a substantive remedy that does not modify (and therefore does not conflict with) any federal procedural rule. And under *American Studies*, that substantive remedy is *not* tied, as a matter of D.C. law, to the application of any heightened procedural standards that *do* conflict with federal procedural rules. Section 16-5504 therefore applies in federal diversity litigation unless, as Akhmetshin agrees, any federal rule "answer[s] the same question" as § 16-5504. Anti-SLAPP Opp. 6. But (as Akhmetshin does not dispute), no federal rule "answers . . . the question" of a prevailing party's entitlement to attorney's fees in these circumstances, which is why state-law fee-shifting provisions routinely apply in federal diversity litigation. *See* Anti-SLAPP MTD 10–11. Section 16-5504 therefore entitles Browder to attorney's fees in the event the Court grants his motion to dismiss.

   A.   **Akhmetshin Does Not Dispute that Section 16-5504 Is a Substantive Fee-Shifting Remedy.**

Akhmetshin does not dispute—thereby conceding—that § 16-5504 is a substantive fee-shifting remedy that must apply in federal diversity litigation unless preempted by a valid federal rule. Anti-SLAPP MTD 9–10; *see, e.g.*, *Henneghan v. District of Columbia*, 916 F. Supp. 2d 5, 9 (D.D.C. 2013) ("[T]he Court may treat as conceded any argument raised in the motion which the opposing parties fail to address."). Nor could he, as it is well established that prevailing-party fee-shifting statutes are substantive laws that must apply under the Rules of Decision Act. *See* Anti-SLAPP MTD 10. And, as the D.C. Court of Appeals has more recently—and authoritatively—

confirmed, "the fee-shifting provision of the Anti-SLAPP Act in § 16-5504(a) provides a substantive remedy." *Khan v. Orbis Bus. Intel. Ltd.*, 292 A.3d 244, 260 (D.C. 2023).

The starting point for this analysis is accordingly undisputed: unless preempted by a valid federal rule, § 16-5504 must apply in federal diversity litigation.

**B. Akhmetshin Does Not Dispute that No Federal Rule "Answers the Same Question" About a Prevailing Party's Right to Attorney's Fees in These Circumstances.**

Akhmetshin similarly does not dispute—thereby conceding—that "no federal rule 'answers the same question' about a prevailing party's right to attorney's fees" in these circumstances. Anti-SLAPP MTD 13; *see, e.g.*, *Henneghan*, 916 F. Supp. 2d at 9. And, as the D.C. Court of Appeals held in *Khan*, *there is no conflict* between § 16-5504(a) and the Federal Rules: "the fee-shifting provision of the Anti-SLAPP Act in § 16-5504(a) provides a substantive remedy without effecting a modification of the Federal Rules of Civil Procedure. . . . [I]n allowing the court to grant the substantive remedy of a fee award, the Anti-SLAPP Act does not purport to mandate the procedure that the parties and the court must follow for that purpose." 292 A.3d at 260–61. Instead, "[t]he applicable procedure is specified in Rule 54(d)." *Id.* at 261.

The following chart illustrates the relevant change in law since *American Studies* was decided:

| Is a party who wins dismissal of a SLAPP claim under Rule 12's standards entitled to attorney's fees? | | |
| --- | --- | --- |
| | **Federal Rules** | **D.C. Law** |
| **Before *American Studies*** | No answer | No |
| **After *American Studies*** | No answer | Yes |

**C.  Akhmetshin's Appeal to *Abbas* and *Tah* Is Beside the Point.**

Rather than contest either that § 16-5504 is a substantive provision of law, or argue that a federal rule "answers the same question" about a prevailing party's substantive right to attorney's fees after winning dismissal of a SLAPP claim, Akhmetshin stakes his argument to the continued viability of *Abbas* and *Tah*. But in doing so, Akhmetshin misapprehends what parts of *Abbas* and *Tah* remain valid and what parts have been overtaken by subsequent holdings of the D.C. Court of Appeals.

Rather than focus on what *Abbas* had to say about § 16-5504's fee-shifting provision, Akhmetshin focuses his argument on the idea that *Tah* and *Abbas* remain good law and preclude application of the D.C. Anti-SLAPP Act in its entirety. Anti-SLAPP Opp. 3–7. But that is a non sequitur. Browder has not contested the continuing validity of *Tah* and *Abbas* as a general matter, or the validity, as a general matter, of Federal Rules 12 and 56. Nor does Browder contest that *Abbas* and *Tah* continue to preclude application of § 16-5502's heightened procedural standards in federal court. Nothing in Browder's argument depends on a contrary conclusion.

Akhmetshin nonetheless devotes several pages to defending *Abbas* and *Tah*'s holdings that Federal Rules 12 and 56 conflict with the Anti-SLAPP Act's heightened procedural standards. Anti-SLAPP Opp. 3–7. But as Akhmetshin recognizes, *Abbas* and *Tah* found and focused on specific conflicts between the federal rules and particular heightened procedural standards: the Anti-SLAPP Act's burden-shifting provision and procedures regarding stays of discovery. *Id*. at 5; *see Tah v. Glob. Witness Publ'g, Inc.*, 991 F.3d 231, 239 (D.C. Cir. 2021) (the Anti-SLAPP Act "conflicts with the Federal Rules by setting up an additional hurdle a plaintiff must jump over to get to trial"). *Abbas* and *Tah* did *not* hold that Federal Rules 12 and 56 conflict with the Anti-SLAPP Act's fee-shifting provision, or that those Rules "answer" any "question" *other* than with

respect to the "hurdle[s] a plaintiff must jump over to get to trial." *Tah*, 991 F.3d at 239. Akhmetshin's extended defense of those cases is thus beside the point.[1]

### D. The D.C. Circuit's Holding that § 16-5504 Does Not Apply in Federal Diversity Litigation Depended on an Interpretation of D.C. Law that Has Been Superseded by the D.C. Court of Appeals.

Although Akhmetshin does not address this aspect of *Abbas* in his opposition brief, the *Abbas* court *did* speak to the application of § 16-5504 in diversity litigation, and articulated a precise reason why that provision supposedly could not apply: That the Anti-SLAPP Act "does not purport to make attorney's fees available to parties who obtain dismissal by other means, such as under Federal Rule 12(b)(6)." *Abbas v. Foreign Pol'y Grp., LLC*, 783 F.3d 1328, 1337 n.5 (D.C. Cir. 2015). But crucially, that statement rested on an interpretation of *D.C.* law—that is, an interpretation of how § 16-5504 interacted with § 16-5502—that has now been expressly overturned by the D.C. Court of Appeals' authoritative holdings in *American Studies* and *Khan*. Anti-SLAPP MTD 7–9.[2]

_____

[1] In a footnote, Akhmetshin argues that Browder is not entitled to attorney's fees under Section 16-5504 because Browder "cannot claim to have 'prevailed' without reference to Section 16-5502(b)'s procedural standards." Anti-SLAPP Opp. 7 n.4. But as *American Studies* demonstrates, whether a motion must be granted under § 16-5502 *does not depend* on satisfying § 16-5502(b)'s heightened procedural standards. Anti-SLAPP MTD 7–9. Instead, all that is required for a motion to dismiss to be "brought under § 16-5502" for purposes of § 16-5504 is that the motion seek dismissal of a "claim arising from an act in furtherance of the right of advocacy on issues of public interest." D.C. Code § 16-5504(a). In light of *American Studies*, that is a sufficient condition for being "brought under § 16–5502."

[2] Furthermore, the *Abbas* court's assumption about the meaning of "under § 16-5502" also rested on a mistaken view of the Federal *and* D.C. civil rules (which are identical in the relevant respects). Colloquialisms about moving "under" Rule 12 or "under" § 16-5502 aside, as a technical matter Rule 7 is the procedural vehicle for filing a motion in federal and D.C. court: it provides, "In General. A request for a court order must be made by motion," and specifies the minimum requirements for a motion in federal court. Fed. R. Civ. P. 7(b). Rule 12, meanwhile, merely allows certain defenses to be raised in a "motion" filed before a responsive pleading. *See* Fed. R. Civ. P. 7 (defining and authorizing certain pleadings, and defining and authorizing "motions"); *see* D.C. Sup. Ct. R. 7 (same). For the same reason, notwithstanding the colloquial phrasing used to denominate Browder's motions to dismiss, *both* are brought "under" Federal Rule 7(b) in the sense

Indeed, the new circumstances created by the D.C. Court of Appeals' holding in *American Studies* are closer to the hypothetical that the *Abbas* court raised—but did *not* resolve—in its footnote 3. "An interesting issue could arise if a State anti-SLAPP act did in fact exactly mirror Federal Rules 12 and 56. Would it still be preempted under *Shady Grove*? . . . . [T]he answer to that question could matter for attorney's fees and the like." *Id.* at 1335 n.3. Here, the situation is even clearer: the D.C. Court of Appeals has held that § 16-5502 applies to an ordinary motion to dismiss that is granted under ordinary federal pleading standards. A court's dismissal of a "claim arising from an act in furtherance of the right of advocacy on issues of public interest" is therefore "under" § 16-5502 as a matter of D.C. law regardless of the pleading standard that resulted in that dismissal. Anti-SLAPP MTD 9.

### E. Akhmetshin Is Wrong About the Preemptive Scope of Rule 12.

Akhmetshin's principal response to the application of § 16-5504 in this litigation rests on a misunderstanding of the preemptive scope of the Federal Rules. According to Akhmetshin, *Abbas* and *Tah* make it irrelevant "whether, on a given set of facts, applying both the Federal Rules and the Anti-SLAPP Act's special motion procedure would result in the same outcome," and instead, the only test is whether the Federal Rules "answer the same question" as the Anti-SLAPP Act in *any* application. Anti-SLAPP Opp. 6–7. But that misunderstands the test for assessing the preemptive scope of a federal rule. Federal rules displace state law only to the extent there is a "'direct collision' with the state law . . . thereby leaving no room for the operation of that law." *Burlington N. R.R. Co. v. Woods*, 480 U.S. 1, 4–5 (1987). Here, Rule 12 leaves "room for

---

that they invoke the authority granted by that rule to seek an order from the Court—here, an order dismissing the action, and (as in this motion) an order determining that Browder is therefore entitled to attorney's fees by operation of § 16-5504. (The same would be true, incidentally, of a motion filed in D.C. Court. *See* D.C. Sup. Ct. R. 7 (identical to Federal Rule 7)).

operation" of a state fee-shifting provision that applies where a SLAPP claim is dismissed for failure to state a claim.

In accord with that principle, *Abbas* holds that preemption occurs only where the Federal Rules "answer the same question" as a state law and "answer that question *differently*." 783 F.3d at 1333–34 (emphasis added). The *Abbas* court expressly left open whether a Federal Rule could preempt state law that addresses a particular question in the same way. *Id.* at 1335 n.3.

Akhmetshin's reliance on the Eleventh Circuit's decision in *Carbone v. Cable News Network, Inc.* does not change this analysis. 910 F.3d 1345 (11th Cir. 2018). In *Carbone*, the defendant argued that an anti-SLAPP statute's heightened procedural requirements could apply in federal court because "[t]he existence of equivalent provisions of Georgia law" to Federal Rules of 12 and 56 "proves that rules with the same content as Federal Rules 12 and 56 can coexist with the anti-SLAPP statute" and its heightened procedural requirement "in a single system of law." 910 F.3d at 1354–55. The Eleventh Circuit rejected that argument, explaining that the test was not whether the rules could coexist in the same system (*i.e.*, whether it was "logically possible for a court to comply with the requirements of both"), but whether the Federal Rules were "sufficiently broad to control the issue before the Court." *Id.* (citing *Walker v. Armco Steel Corp.*, 446 U.S. 740, 749–50 (1980)). *Carbone* therefore held that Georgia's anti-SLAPP statute could not apply in federal court because it "*unmistakably conflicts* with . . . the Federal Rules by mandating a test of sufficiency that the Rules reject." *Id.* at 1355 (cleaned up) (emphasis added). *Carbone* thus does not address the situation presented here, where application of § 16-5504(a) does *not* conflict with the Federal Rules.

Second, Akhmetshin's vision of federal preemption imagines that because some of the Anti-SLAPP Act's provisions still conflict with the Federal Rules in some cases, *none* of its

provisions can apply in federal diversity litigation. But Akhmetshin cites no authority for that proposition. Nor could he, for the opposite is true. As discussed above, in enacting the Anti-SLAPP Act, the District of Columbia did not enact an inseparable bundle; instead, some aspects of the Act still apply when others do not. *Supra* at 6–7. And under the Supreme Court's jurisprudence, state law presumptively applies in federal diversity litigation unless it is affirmatively, and *specifically*, displaced by a valid federal rule. *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 555 (1949) ("[I]n diversity cases the federal court administers the state system of law in all except details related to its own conduct of business."). Further, federal rules displace state law only to the extent there is a "'direct collision' with the state law . . . thereby leaving no room for the operation of that law." *Burlington*, 480 U.S. at 4–5. Where there *is* "room for operation" of a state law, *id.*, the Federal Rules and state law "can exist side by side, . . . each controlling its own intended sphere of coverage without conflict." *Walker*, 446 U.S. at 752; *see Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 421 (2010) (Stevens, J., concurring) ("If the federal rule does not apply *or can operate alongside the state rule*, then there is no 'Act of Congress' governing that particular question, and the court must engage in the traditional Rules of Decision Act inquiry under *Erie* and its progeny"—*i.e.*, apply state law. (emphasis added) (cleaned up)).

Here, nothing in the text of Rule 12 purports to answer the question whether, when a SLAPP claim is dismissed for failure to state a claim, the prevailing party is entitled to attorney's fees. The text of Rule 12 provides that "[e]very defense to a claim for relief . . . must be asserted in the responsive pleading if one is required," but "a party may assert the following defenses by motion," including—as relevant here—"lack of personal jurisdiction" and "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b), (b)(2), (b)(6). There is simply no conflict between Rule 12, which provides that a party "may assert" certain defenses by motion, and a state

law that also permits the assertion of the *same* defenses by motion—and then provides for a substantive outcome tied to prevailing-party status on such a motion. Moreover, nothing turns on the fact that the state law in question—§ 16-5502—also permits a moving party to hold a plaintiff to higher pleading standards in other cases. As *American Studies* illustrates, those heightened pleading standards are *not* mandatory. Instead, they need not apply in order for dismissal to be appropriate. *Am. Stud. Ass'n v. Bronner*, 259 A.3d 728, 750 (D.C. 2021).

Akhmetshin's argument is thus reduced to the highly formalistic position that § 16-5504 cannot apply in federal court because it cross-references a section of D.C. law, § 16-5502, which itself contains a variety of possible bases for dismissal, some which may apply in federal court and some which may not. In other words, Akhmetshin's position appears to be that, because of this cross-reference, § 16-5504 may ***never*** apply in federal court if ***any*** of § 16-5502's contents conflict with the Federal Rules. As discussed above, that is not how the D.C. Court of Appeals has interpreted § 16-5504, which is what matters most here. But that position is also untenable on its own terms. Consider a hypothetical state law that read as follows:

> **Section (x):** A party may file a pre-answer motion to dismiss under this section, which shall be granted if:
>
> > **(1)** the facts alleged in the complaint are insufficient to satisfy Rule 12 of the Federal Rules of Civil Procedure; or
> >
> > **(2)** the facts alleged in the complaint are insufficient to satisfy Rule 56 of the Federal Rules of Civil Procedure.
>
> **Section (y):** The court may award a moving party who prevails, in whole or in part, on a motion brought under Section (x) the costs of litigation, including reasonable attorney fees.

On Akhmetshin's theory, Section (y) could ***never*** apply in federal diversity litigation because it refers to Section (x), and Subsection (x)(2) conflicts with Rule 12. But this ignores the distinct question whether Section (y) could apply to a dismissal under Subsection (x)(1), even if it could

never be applied to a pre-answer dismissal under Subsection (x)(2). The answer to that question here, as in the hypothetical, is "yes," and nothing in *Abbas* and *Tah* hold otherwise.

Extending the hypothetical, it is also clear that federal courts would be bound to apply a state statutory provision that read: "The court may award a moving party who prevails, in whole or in part, on a pre-answer motion to dismiss a claim arising from an act in furtherance of the right of advocacy on issues of public interest"—indeed, Akhmetshin does not contest that a prevailing-party fee-shifting statute of that kind must apply in federal diversity litigation. *Supra* at 3–4. But the only difference between that provision and the hypothetical Subsection (y) described above is that Subsection (y) achieves the same result by cross-referencing another provision of state law describing *two* alternative standards for pre-answer dismissal, one that is consistent with, and one that is inconsistent with, the Federal Rules. And the only difference, in turn, between Subsection (y) and § 16-5504—in light of the way the D.C. Court of Appeals has interpreted § 16-5502—is that the hypothetical Section (x) breaks its alternative standards into separate subsections while § 16-5502(b) does not. But nothing can turn on that difference: a state legislature does not have to follow a particular drafting formula in order for its enactments to apply in federal diversity litigation. "[T]he way [a state] has structured its statute is immaterial" for purposes of assessing a conflict between the Federal Rules and state law. *Shady Grove*, 559 U.S. at 401 (opinion of the Court). Instead, the operation of the state law is what matters, which is fundamentally a question of state law. Here, the District of Columbia was free to make the drafting choice that it did, just as it was free to enact a free-standing fee-shifting provision that did not cross-reference other elements of the Anti-SLAPP statute, some of which conflict with the Federal Rules. Its idiosyncratic statutory drafting choices cannot affect the extent to which its laws, as authoritatively interpreted by the D.C. Court of Appeals, apply in federal court.

11

To hold otherwise would impose an artificial statutory drafting rule on state legislatures that has no place in federal jurisprudence. It bears reiterating that the dual operation of § 16-5504 and § 16-5502—that is, what it means for a motion to be "brought under § 16-5502" for purposes of § 16-5504—is a question of *D.C.* law. And, in light of *American Studies*, the hypothetical Section (x) described above is functionally indistinguishable from the way the D.C. Court of Appeals has now interpreted § 16-5502. The Supreme Court's *Erie/Hanna/Shady Grove* jurisprudence does not require state legislatures to break out subsections (or even separate statutory enactments) when they wish certain laws to apply in federal court. Indeed, the presumption goes the other way: because "there is no federal general common law," "the law to be applied in any case is the law of the state"—"*[e]xcept* in matters governed by the Federal Constitution or by acts of Congress." *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938) (emphasis added). Furthermore, because the Rules Enabling Act limits the Supreme Court's rulemaking authority as a statutory matter, courts must approach the preemptive scope of the federal rules with "caution," so as to avoid readings that might "abridge, enlarge or modify any substantive right." *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 845 (1999) (quoting 28 U.S.C. § 2072(b)). If state law—as authoritatively interpreted by the state's highest court—makes certain (unpreempted) aspects of state law severable from other (preempted) aspects of state law, then a federal court is bound to apply the unpreempted aspects in diversity litigation.

Here, this analysis leads to the conclusion that where a party wins dismissal of an undisputed "claim arising from an act in furtherance of the right of advocacy on issues of public interest," that dismissal is "under § 16-5502" within the meaning of § 16-5504. In other words, this is a case in which—notwithstanding the existence of *some* circumstances in which § 16-5502 and Rule 12 might conflict—a "federal court can simultaneously apply both the federal standard"

for dismissal on a pre-answer motion "and the District rule" for when attorney's fees are available after such a dismissal. *Burke v. Air Serv Int'l, Inc.*, 685 F.3d 1102, 1108 (D.C. Cir. 2012).

## II.   A Claim is Not "Likely to Succeed on the Merits" Under *American Studies* Whenever It Is Dismissed on a Pre-Answer Motion, Including When It Is Dismissed for Lack of Personal Jurisdiction.

Akhmetshin next argues that, even if the Anti-SLAPP's fee-shifting provision can apply based on the foregoing analysis, it should not apply "where dismissal [is] premised on a lack of personal jurisdiction" because the Anti-SLAPP statute refers to a party's "success on the merits." Anti-SLAPP Opp. 7–9. That argument is wrong both as a matter of logic and precedent.

First, Akhmetshin's argument misreads the statute, which does *not* contain any limitation for merits dismissals. As written, the statute actually does the opposite: it *requires* dismissal in *all* cases, "*unless*" a claim "is likely to succeed on the merits." D.C. Code § 16-5502(b) (emphasis added).[3] The statute therefore incorporates *any* reason for dismissal within its coverage, and then carves out a sole exception: likelihood of success on the merits. The fact that a claim is dismissed for any of those other, unspecified reasons—such as personal jurisdiction—means that the statutory exception is not satisfied.

*American Studies* itself confirms this common-sense reading. As the D.C. Court of Appeals held, "*regardless of the particular defense or other reason*, when no relief can be granted on a claim as a matter of law, the claim is not 'likely to succeed on the merits' because it legally *cannot* succeed on the merits." *Am. Stud. Ass'n*, 259 A.3d at 741 (first emphasis added). When a court lacks personal or subject-matter jurisdiction, "no relief can be granted" on a claim. *Id.*

---

[3] To translate this language to the procedural standards that must apply in federal court (and may, under *American Studies*), imagine that § 16-5502(b) provided that an Anti-SLAPP motion "shall be granted unless the complaint states a claim upon which relief can be granted." A court could not conclude that a complaint stated a claim, and could therefore survive dismissal under that hypothetical provision, without first concluding that it established personal and subject-matter jurisdiction.

The statutory text and precedent also reflects basic logic. "[S]uccess on the merits" *necessarily includes* success on threshold jurisdictional issues that must precede the merits, like personal jurisdiction. For that reason, courts treat "likelihood of success" as incorporating questions of personal and subject-matter jurisdiction. Indeed, absent a "substantial likelihood" that the plaintiff will establish personal jurisdiction over the defendant, a plaintiff cannot establish a likelihood of success on the merits. *12 Percent Logistics, Inc. v. Unified Carrier Registration Plan Bd.*, 282 F. Supp. 3d 190, 200 (D.D.C. 2017); *see Randle v. W. Valley City Police Dep't (of Utah)*, No. 19-CV-1342 (RC), 2019 WL 3304691, at *3 n.1 (D.D.C. July 23, 2019). Similarly, "a plaintiff cannot show any likelihood of success on the merits if a court lacks subject matter jurisdiction." *Popkin v. Burwell*, 172 F. Supp. 3d 161, 168 (D.D.C. 2016).

Akhmetshin's reliance on the distinction between jurisdictional and merits issues, therefore, disproves his own argument. Anti-SLAPP Opp. 8–9 & n.5. As Akhmetshin rightly points out, jurisdiction is a necessary prerequisite to the merits. *Id.* "Success on the merits," therefore, necessarily assumes success on the threshold jurisdictional issues that always come first. If the Court dismisses Akhmetshin's claims for lack of personal jurisdiction, his claims will necessarily not have satisfied § 16-5502(b)—even when that provision translated, as it must be here, into ordinary federal pleading standards that apply at the motion-to-dismiss stage.

## III. The Court Cannot and Should Not Permit "Targeted Discovery" Under § 16-5502(c)(2).

As discussed above, § 16-5502 can operate alongside the Federal Rules where, as here, it is undisputed that "the claim at issue arises from an act in furtherance of the right of advocacy on issues of public interest," but nevertheless cannot survive a motion to dismiss under ordinary federal pleading standards—and, consequently, § 16-5504 must apply to this litigation. *Supra* at 3–13. The same logic does *not* mean that § 16-5502(c)(2)'s early discovery provision can apply in

federal court. Under *Abbas* and *Tah* it cannot, *see Tah*, 991 F.3d at 239, and—unlike the statutory

fee-shifting provision discussed above—*American Studies* has done nothing to change that.

In any event, even if § 16-5502(c)(2) could apply in federal diversity litigation, discovery

would not be appropriate here. Section 16-5502(c)(2) does not *mandate* discovery, it merely

permits it when the party seeking discovery provides adequate justification. As the D.C. Court of

Appeals has explained, the standard for obtaining discovery under § 16-5502(c)(2) is "difficult to

meet":

> A plaintiff seeking discovery must show more than "good cause,"
> and he cannot merely argue that the evidence he seeks would be
> relevant or helpful. He must be able to articulate how targeted
> discovery will enable him to defeat the special motion to dismiss.
> He also must show that it is "likely" the discovery will produce that
> result.

*Fridman v. Orbis Bus. Intel. Ltd.*, 229 A.3d 494, 512–13 (D.C. 2020). Here, Akhmetshin does not

even *attempt* to satisfy any of those standards. Anti-SLAPP Opp. 10. There is accordingly no basis

to order even the most limited discovery under § 16-5502(c)(2).[4]

Finally, Akhmetshin argues that his claim is likely to succeed on the merits. Anti-SLAPP

Opp. 9–10. Those arguments are fanciful, for all of the reasons addressed in Browder's briefing

on his motion to dismiss under Rule 12's standards. *See* ECF No. 55, at 12–45. In sum, if the Court

grants that motion, Akhmetshin's claim necessarily cannot satisfy any standard of "success" under

§ 16-5502, and the Court must grant this motion as well.

---

[4] In the unlikely event that this Court were to permit discovery under § 16-5502(c)(2), any such
order should be "conditioned upon the plaintiff paying any expenses incurred by the defendant in
responding to such discovery." D.C. Code § 16-5502(c)(2).

**IV.    Akhmetshin Does Not Dispute that, to the Extent It Applies, § 16-5504 Mandates a Fee Award in this Case.**

Akhmetshin does not dispute that there are no "special circumstances" that would make a fee award unjust in this case. Anti-SLAPP MTD 14. It is accordingly uncontested that, if the Court concludes that Rule 12 and § 16-5502 can operate alongside one another in these circumstances, the Court must award Browder attorney's fees and "fees on fees."[5]

## CONCLUSION

For the foregoing reasons, this action should be dismissed with prejudice. In addition, pursuant to D.C. Code § 16-5504, the Court should award Browder the costs of this litigation, including reasonable attorney's fees and "fees on fees," in an amount to be determined following a motion pursuant to Federal Rule of Civil Procedure 54(d)(2).

Dated: June 23, 2023                            Respectfully submitted,

                                                s/ Michael J. Gottlieb
                                                Michael J. Gottlieb (D.C. Bar No. 974960)
                                                Stephanie Miner (D.C. Bar No. 1033586)
                                                Aaron E. Nathan (D.C. Bar No. 1047269)
                                                WILLKIE FARR & GALLAGHER LLP
                                                1875 K Street NW
                                                Washington, DC 20006
                                                Phone: 202-303-1000
                                                Fax: 202-303-2000
                                                mgottlieb@willkie.com

                                                *Counsel for Defendant William Browder*

---

[5] In addition, Akhmetshin does not dispute that any dismissal at this stage should be with prejudice. Anti-SLAPP MTD 14 n.3.

**CERTIFICATE OF SERVICE**

I hereby certify that on June 23, 2023, I caused a true and correct copy of the foregoing to be served by electronic means, *via* the Court's ECF system, on all counsel registered to receive electronic notices.

/s/ Michael J. Gottlieb
Michael J. Gottlieb (DC Bar No. 974960)