**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| RINAT AKHMETSHIN,<br><br>            Plaintiff,<br><br>v.<br><br>WILLIAM BROWDER,<br><br>            Defendant. | No. 18-cv-1638 (EGS) |

**MEMORANDUM OPINION**

## I. Introduction

Plaintiff Rinat Akhmetshin ("Mr. Akhmetshin"), a dual citizen of Russia and the United States, brings this defamation action against Defendant William Browder ("Mr. Browder"), a British foreign national. Mr. Akhmetshin alleges that Mr. Browder defamed him by stating that Mr. Akhmetshin is a Russian spy after identifying him as a threat to Mr. Browder's lobbying efforts. Mr. Akhmetshin asserts that Mr. Browder made that claim in four defamatory and false statements—two statements on his Twitter account, another statement during a televised interview, and one quote in a news article.

This matter is before the Court on remand from the Court of Appeals for the District of Columbia Circuit ("D.C. Circuit") with instructions to reassess whether—considering the District of Columbia Court of Appeals' ("D.C. Court of Appeals") decision

in *Akhmetshin v. Browder*, 275 A.3d 290 (D.C. 2022)—specific personal jurisdiction comports with the District of Columbia's (the "District") long-arm statute and, separately, the Due Process Clause. Mr. Browder renewed his motions to dismiss, and the parties fully briefed the motions. Upon careful consideration of the motions, responses, replies thereto, applicable law, and the entire record herein, Mr. Browder's Motion to Dismiss for lack of personal jurisdiction is **GRANTED**, and Mr. Browder's Motion to Dismiss under D.C. Code § 16-5502 is **DENIED**.

## II. Background

### A. Factual Background

The following facts—drawn from the Complaint and documents incorporated by reference therein—are assumed to be true. *See Banneker Ventures, LLC v. Graham*, 798 F.3d 1119, 1129 (D.C. Cir. 2015).[1] Mr. Browder is a British citizen who renounced his U.S. citizenship in 1998. Compl., ECF No. 1 ¶ 10.[2] At some point, Mr. Browder moved to Russia where he founded Hermitage Capital Management ("Hermitage"). *See id*. ¶ 18. Hermitage, one of the

---

[1] These facts are restated from this Court's September 16, 2019 Memorandum Opinion. *See Akhmetshin v. Browder*, 407 F. Supp. 3d 11 (D.D.C. 2019) (hereinafter *Akhmetshin I*), *vacated and remanded*, No. 19-7129, 2022 WL 17812579 (D.C. Cir. Dec. 19, 2022).

[2] When citing electronic filings throughout this opinion, the Court cites to the ECF header page number, not the original page number of the filed document.

largest Russian hedge funds, has amassed over $4 billion in assets. *Id.* In 2008, Russian authorities detained an auditor for Hermitage's law firm, Sergei Magnitsky ("Mr. Magnitsky"), who, in 2009, died in a Russian prison. *Id.* ¶¶ 19-20. Mr. Browder maintains that "Russian prison guards killed [Mr.] Magnitsky because [Mr.] Magnitsky discovered that Russian government officials and members of organized crime had perpetrated a tax fraud scheme using the identities of several Hermitage portfolio companies (the 'Hermitage Tax Refund Scheme')." *Id.* ¶ 21.

After Mr. Magnitsky's death, Mr. Browder started a lobbying campaign. *See id.* ¶¶ 22-24. Mr. Browder "engaged numerous lobbying and public relations firms in Washington D.C.; met with members of Congress and their staff, including Senators Benjamin Cardin and John McCain in Washington D.C.; and testified in congressional hearings to advance his narrative about [Mr.] Magnitsky and the Hermitage Tax Refund Scheme." *Id.* ¶ 23. Mr. Browder eventually wrote a book, *Red Notice*, "purport[ing] to tell the truth about the Hermitage Tax Refund Scheme and the Magnitsky affair." *Id.* ¶ 60. On December 14, 2012, Congress passed the Magnitsky Act, *id.* ¶ 24, authorizing the President to impose sanctions against certain individuals who committed human rights violations, including those individuals responsible for

the detention, abuse, or death of Mr. Magnitsky, *id.* ¶ 26.[3] In response, Russia implemented a ban on U.S. citizens adopting Russian orphans. *Id.* ¶ 27.

Mr. Akhmetshin, a District of Columbia resident, is "an expert on the legal political, social, and economic characteristics of many of the countries that formerly comprised the Soviet Union." *Id.* ¶ 16. His work includes "offer[ing] strategic communications advice, and more recently lobbying services." *Id.* In August 2015, Mr. Akhmetshin was retained as a consultant in an ongoing lawsuit in the United States District Court for the Southern District of New York (the "Prevezon Case").[4] While reviewing documents in connection with the

---

[3] Congress made the following factual findings related to Mr. Magnitsky's death:

> On July 6, 2011, Russian President Dimitry Medvedev's Human Rights Council announced the results of its independent investigation into the death of [Mr.] Magnitsky. The Human Rights Council concluded that [Mr.] Magnitsky's arrest and detention was illegal; he was denied access to justice by the courts and prosecutors of the Russian Federation; he was investigated by the same law enforcement officers whom he had accused of stealing Hermitage Fund companies and illegally obtaining a fraudulent $230,000,000 tax refund; he was denied necessary medical care in custody; he was beaten by [eight] guards with rubber batons on the last day of his life; and the ambulance crew that was called to treat him as he was dying was deliberately kept outside of his cell for one hour and [eighteen] minutes until he was dead.

Magnitsky Act, Pub. L. No. 112-208, § 402(a)(8), 126 Stat. 1496, 1503.

[4] The Court takes judicial notice of the proceedings in *United States v. Prevezon Holdings Ltd., et al.*, Civil Action No. 13-

Prevezon Case, Mr. Akhmetshin began to "question [Mr.] Browder's version of events concerning the Hermitage Tax Refund Scheme and [Mr.] Magnitsky's death." *Id.* ¶ 31. Mr. Akhmetshin became convinced that Congress enacted the Magnitsky Act based on falsehoods, which "had the tragic side-effect of halting American adoptions of Russian orphans." *Id.* ¶ 32.

Soon thereafter, Mr. Akhmetshin began working for a newly formed lobbying organization, the Human Rights Accountability Global Initiative ("HRAGI"), aimed to restart "Russian adoptions in America by, among other things, removing [Mr.] Magnitsky's name from the Magnitsky Act." *Id.* ¶ 34. The lobbying organization was formed based on Mr. Akhmetshin's interest in educating the public and government officials about "[Mr.] Browder's version of [the] events" regarding the passage of the Magnitsky Act. *Id.* ¶ 33.

In April 2016, Mr. Akhmetshin became a "registered lobbyist" for HRAGI, crafting a counternarrative to the factual findings set forth in the Magnitsky Act. *Id.* ¶¶ 35-37. In June

---

6326-WHP (S.D.N.Y.) and the subsequent appeal. *See Pearson v. District of Columbia*, 644 F. Supp. 2d 23, 45 n.19 (D.D.C. 2009), *aff'd*, 377 F. App'x 34 (D.C. Cir. 2010). In that case, the government alleged that "Prevezon Holdings Ltd. and related entities ('Prevezon') . . . laundered a portion of the purportedly ill-gotten gains from the Hermitage Tax Refund Scheme through certain New York real estate." *Id.* at 5 ¶ 28; *see also United States v. Prevezon Holdings Ltd.*, 839 F.3d 227, 230 (2d Cir. 2016).

2016, Mr. Akhmetshin organized a screening in the District for a documentary that challenged the accuracy of the Magnitsky Act's findings. *Id.* ¶ 37. Mr. Akhmetshin's other acts included "attend[ing] meetings with and distribut[ing] certain documents to members of Congress . . . assert[ing] that [Mr.] Browder's story concerning the Hermitage Tax Refund Scheme and [Mr.] Magnitsky's death were false, and that [Mr.] Browder had committed tax fraud with [Mr.] Magnitsky's assistance." *Id.* ¶ 36.

In July 2016, after becoming aware of Mr. Akhmetshin's lobbying efforts, Mr. Browder "caused Hermitage to submit a letter to the Department of Justice . . . alleging that [Mr.] Akhmetshin and others had violated the Foreign Agent Registration Act." *Id.* ¶ 39. To undermine Mr. Akhmetshin, who he "identified . . . as a rival and a threat to his lobbying efforts," Mr. Browder "defamed [Mr.] Akhmetshin by falsely stating to reporters and others that [Mr.] Akhmetshin is a Russian spy." *Id.* ¶ 43.

### 1. The Four Alleged Defamatory Statements

According to Mr. Akhmetshin, "[Mr.] Browder directed [four] defamatory statements about [Mr.] Akhmetshin at [sic] the District of Columbia." *Id.* ¶ 63. In July 2017, news media outlets widely reported that Mr. Akhmetshin and others met with Donald Trump, Jr., at Trump Tower in New York on June 9, 2016.

*Id.* ¶ 45. On July 14, 2017, Mr. Browder posted two tweets on his personal Twitter account, which has over 100,000 followers. *Id.* ¶¶ 48-49, 68. First, Mr. Browder tweeted: "Huge development in the Veselnitskaya/Trump Jr story. Russian GRU officer Rinat Akhmetshin was also present." *Id.* ¶ 48; *see also* Ex. A, Decl. of Michael Gottlieb ("Gottlieb Decl."), ECF No. 20-5 at 2-7.[5]  In that tweet, Mr. Browder shared a hyperlink to the NBC News article entitled, "Former Soviet counterintelligence officer at meeting With Donald Trump Jr. and Russian lawyer." Ex. A, ECF No. 20-5 at 2. More than one hour later, Mr. Browder issued a second statement, tweeting, "Russian intelligence asset Rinat Akhmetshin confirms he was in the meeting with Trump Jr[,]" and sharing a hyperlink to an Associated Press ("AP") article in that Twitter post. Compl., ECF No. 1 ¶ 49 (emphasis added); *see also* Ex. B, Gottlieb Decl., ECF No. 20-6 at 2-12.

On the same day, Business Insider published an article on its website entitled, "A Soviet military officer turned lobbyist attended the Trump Jr. meeting – and there may have been a 6th person, too." Ex. C, Gottlieb Decl., ECF No. 20-7 at 2. That article included a quote from Mr. Browder: "So in my opinion you

---

[5] The Gottlieb Declaration, ECF No. 55-1, re-submits the exhibits attached to the Declaration of Melissa Shube, ECF No. 20-2, filed with the original motions to dismiss. For ease of locating the exhibits, the Court refers to the original ECF number that corresponds with the exhibit.

had a member of Putin's secret police directly meeting with the son of the future next president of the United States asking to change US sanctions policy crucial to Putin." *Id.* According to Mr. Akhmetshin, "[Mr.] Browder intended his [third] statement to be interpreted as a statement of fact that [Mr.] Akhmetshin was 'a member of Putin's secret police.'" Compl., ECF No. 1 ¶ 50.

Finally, Mr. Browder made the fourth statement in an interview on CBS This Morning on July 18, 2017. *Id.* ¶ 51. Mr. Browder stated that "[Natalia Veselnitskaya] then hires this guy Rinat Akhmetshin, who is a – by all accounts, some kind of shady former Soviet spy, current spy operator in Washington." *Id.* (emphasis added). Mr. Browder also stated that "[Mr. Akhmetshin] then organizes a full-on lobbying campaign hiring the top lobbyists, the top law firms, the top PR firms, to try to get rid of this Magnitsky Act." Def.'s Mot. to Dismiss Pursuant to Rule 12(b) ("Def.'s 12(b) Mot. to Dismiss"), ECF No. 55 at 17 (quoting Ex. D, Gottlieb Decl., ECF No. 20-8 at 1).

### B. Procedural Background

After Mr. Akhmetshin filed this lawsuit on July 12, 2018, Mr. Browder filed two motions to dismiss, one pursuant to Rules 12(b)(2) and 12(b)(6), *see* Def.'s Mot. to Dismiss, ECF No. 20, and the other pursuant to the District of Columbia Anti-SLAPP Act, D.C. Code § 16-5502(a) ("Anti-SLAPP Act"), *see* Def.'s Special Mot. to Dismiss, ECF No. 19. The Court granted Mr.

Browder's Motion to Dismiss for lack of personal jurisdiction under Rule 12(b)(2), concluding that Mr. Browder's contacts with the District of Columbia did not constitute a "persistent course of conduct" under the District's long-arm statute. *Akhmetshin I*, 407 F. Supp. 3d at 24–25. In its analysis, the Court determined that "Mr. Browder's contacts with government agencies do not enter the jurisdictional calculus." *Id.* at 24 (internal quotations and citation omitted). The Court denied Mr. Browder's Special Motion to Dismiss pursuant to the Anti-SLAPP Act because "controlling precedent [in this Circuit] precludes the application of D.C.'s Anti-SLAPP Act in federal court." *Id.* at 17 n.9.

Mr. Akhmetshin appealed. The D.C. Circuit vacated this Court's judgment and ordered jurisdictional discovery prior to determining whether Mr. Browder engaged in a persistent course of conduct under the District's long-arm statute. *See Akhmetshin v. Browder*, 983 F.3d 542, 558 (D.C. Cir. 2020), *vacated by Akhmetshin v. Browder*, No. 19-7129, 2022 WL 17812579 (D.C. Cir. Dec. 19, 2022). Thereafter, Mr. Akhmetshin filed a petition for rehearing and rehearing en banc. *See Akhmetshin*, No. 19-7129, 2022 WL 17812579, at *1. Denying Mr. Akhmetshin's request for rehearing, the D.C. Circuit certified questions of law regarding the government contacts exception's applicability to the District's long-arm statute to the D.C. Court of Appeals. *See*

*Akhmetshin v. Browder*, 993 F.3d 922, 929 (D.C. Cir. 2021). The D.C. Court of Appeals issued its decision on May 26, 2022, *see Akhmetshin*, 275 A.3d at 290; and the D.C. Circuit remanded the case to this Court for "further consideration of the entire case in light of the D.C. Court of Appeals' decision." *Akhmetshin*, 2022 WL 17812579, at *1. Mr. Browder filed renewed motions to dismiss. *See* Def.'s 12(b) Mot. to Dismiss, ECF No. 55; Def.'s Mot. to Dismiss Compl. Under D.C. Code § 16-5502 ("Def.'s Special Mot. to Dismiss"), ECF No. 56. These issues are fully briefed and ready for the Court's adjudication.

**III. Standard of Review**

    **A. Motion to Dismiss for Lack of Personal Jurisdiction**

Under Rule 12(b)(2), a defendant may move to dismiss an action when the court lacks personal jurisdiction. Fed. R. Civ. P. 12(b)(2). On such a motion, the plaintiff bears the burden of establishing a factual basis for the exercise of personal jurisdiction over each defendant. *Crane v. N.Y. Zoological Soc'y.*, 894 F.2d 454, 456 (D.C. Cir. 1990). To meet this burden, the plaintiff must allege specific facts that connect the defendant with the forum. *Second Amend. Found. v. U.S. Conf. of Mayors*, 274 F.3d 521, 524 (D.C. Cir. 2001). The plaintiff cannot rely merely on conclusory allegations. *Atlantigas Corp. v. Nisource, Inc.*, 290 F. Supp. 2d 34, 42 (D.D.C. 2003). The court may consider, receive, and weigh affidavits and other relevant

materials outside of the pleadings to assist it in determining the pertinent jurisdictional facts. *United States v. Philip Morris Inc.*, 116 F. Supp. 2d 116, 120 n.4 (D.D.C. 2000).

"Specific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Molock v. Whole Foods Mkt., Inc.*, 297 F. Supp. 3d 114, 122 (D.D.C. 2018) (quoting *Goodyear Dunlop Tires Operations v. Brown*, 562 U.S. 915, 919 (2011)).[6] "[S]pecific jurisdiction exists if a claim is related to or arises out of the non-resident defendant's contacts with the forum." *Id.* A plaintiff must demonstrate "that specific jurisdiction comports with the forum[']s long-arm statute, D.C. Code § 13-423(a), and does not violate due process." *Id.* (citing *FC Inv. Grp. v. IFX Mkts. Ltd.*, 529 F.3d 1087, 1094-65 (D.C. Cir. 2008)).[7] To satisfy due process requirements, "a plaintiff

---

[6] At this juncture, Mr. Akhmetshin does not assert that the Court has general personal jurisdiction over Mr. Browder. *See* Pl.'s 12(b) Opp'n, ECF No. 58. Accordingly, the Court only examines whether it can exercise specific personal jurisdiction.

[7] Mr. Browder's renewed motion to dismiss also requests that the Court dismiss Mr. Akhmetshin's complaint for failure to state a claim pursuant to Rule 12(b)(6). *See* Def.'s 12(b) Mot. to Dismiss, ECF No. 55 at 36. The Court does not reach Mr. Browder's Rule 12(b)(6) arguments after addressing the issue of personal jurisdiction. *See App Dynamic ehf v. Vignisson*, 87 F. Supp. 3d 322, 324 (D.D.C. 2015) ("Defendant raises three different grounds for jettisoning the case: [1] lack of personal jurisdiction, [2] lack of subject-matter jurisdiction, and [3] failure to state a claim. The Court need look no farther than the first to grant the Motion.").

must demonstrate that there are 'minimum contacts between the defendant and the forum establishing that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Swecker v. Midland Power Coop.*, 253 F. Supp. 3d 274, 278 (D.D.C. 2017) (citation omitted). D.C.'s long-arm statute authorizes the exercise of specific jurisdiction under certain enumerated circumstances, including when an entity transacts any business in the District; contracts to supply services in the District; causes tortious injury in the District; or has an interest in, uses, or possesses real property in the District. D.C. Code § 13-423(a)(1)-(5).

For the reasons explained below, the Court concludes that although Mr. Browder's contacts with the District constitute a "persistent course of conduct" under D.C. Code § 13-423(a)(4), exercising specific personal jurisdiction over him does not comport with due process.

### B. District of Columbia Anti-SLAPP Act

"The D.C. Anti-SLAPP Act provides a party defending against a SLAPP with procedural tools to protect themselves from 'meritless' litigation." *Am. Studies Ass'n v. Bronner*, 259 A.3d 728, 738-39 (D.C. 2021).[8] The Act allows a party to file a

---

[8] "[T]he term SLAPP is used to refer to 'an action filed by one side of a political or public policy debate aimed to punish or prevent opposing points of view.'" *Id.* at 733 (quoting

special motion to dismiss "any claim arising from an act in furtherance of the right of advocacy on issues of public interest." D.C. Code § 16-5502(a). Once the moving party shows that the claim is one "aris[ing] from an act in furtherance of the right of advocacy on issues of public interest," the burden shifts to the non-moving party to show that the claim is "likely to succeed on the merits." *Id.* § 16-5502(b). If a court concludes that a claim is not "likely to succeed on the merits," the special motion should be granted. *Id.* "The Court may award a moving party who prevails, in whole or in part, on a motion brought under § 16-5502 [ ] the costs of litigation, including reasonable attorney fees." D.C. Code § 16-5504(a).

## IV. Analysis

### A. Personal Jurisdiction

The Court begins by re-assessing whether Mr. Browder's contacts—with the inclusion of his government contacts pursuant to *Akhmetshin*, 275 A.3d at 290—establish a "persistent course of conduct" under section (a)(4) of the D.C. long-arm statute. The Court then turns to whether the exercise of specific personal jurisdiction would violate due process.

---

*Competitive Enter. Inst. v. Mann*, 150 A.3d 1213, 1226 (D.C. 2016)).

**1. Mr. Browder's Contacts with the District Constitute a "Persistent Course of Conduct" Under D.C. Code § 13-423(a)(4)**

Subsection (a)(4) of the District of Columbia's long-arm statute provides:

> A District of Columbia Court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a claim for relief arising from the person's . . . causing tortious injury in the District of Columbia by an act or omission outside the District of Columbia if he [1] regularly does or solicits business, [2] engages in any other persistent course of conduct, or [3] derives substantial revenue from goods used or consumed, or services rendered, in the District of Columbia[.]

D.C. Code § 13-423(a)(4). This subsection "provides specific jurisdiction over non-resident defendants whose tortious acts outside the District of Columbia cause injury within the District if defendant[] satisf[ies] one of the three enumerated 'plus factors.'" *Lewy v. S. Poverty Law Ctr., Inc.*, 723 F. Supp. 2d 116, 123 (D.D.C. 2010). The only "plus factor" at issue here is the second prong: "engages in any other persistent course of conduct."[9]

---

[9] Previously, this Court concluded that Mr. Akhmetshin failed to demonstrate that Mr. Browder's contacts with the District met two of the three "plus factors" listed in subsection (a)(4). *Akhmetshin I*, 407 F. Supp. 3d at 21-22. The final plus factor, "engages in any other persistent course of conduct" is the only ground of personal jurisdiction under D.C.'s long-arm statute asserted in Mr. Akhmetshin's renewed briefing. *See* Pl.'s 12(b) Opp'n, ECF No. 58. Accordingly, the Court only addresses the "persistent course of conduct" plus factor to subsection (a)(4).

There is no cut and dry test for what constitutes a "persistent course of conduct," but what is clear is that the contacts required for this plus factor are "considerably less substantial than those it takes to establish general, all-purpose . . . jurisdiction." *Lewy*, 723 F. Supp. 2d at 123 (quoting *Crane v. Carr*, 814 F.2d 758, 763 (D.C. Cir. 1987)) (internal quotations omitted). Mr. Akhmetshin relies on a variety of contacts Mr. Browder has with the District, including: (1) Mr. Browder's meetings with government officials in the District and testimony before Congress in support of the Magnitsky Act; (2) Mr. Browder's visits to promote his book in 2015; (3) eight media appearances in the District between 2012 and when the Complaint was filed in 2017; (4) Mr. Browder's retention of a D.C. law firm for an unrelated matter; (5) Mr. Browder's threats to sue the Newseum, which at the time was located in the District; (6) Mr. Browder's position on the Advisory Council of the Kleptocracy Initiative of the Hudson Institute based in the District; and (7) other meetings and events with individuals in the District. *See* Pl.'s Opp'n to

---

*See Int'l Union, United Gov't Sec. Officers of Am. v. Clark*, 704 F. Supp. 2d 54, 60 (D.D.C. 2010) ("It is a long-established policy that when a party's opposition to a motion fails to respond to arguments raised by the opposing party, a court may treat those unopposed arguments as conceded.").

Def.'s Mot. to Dismiss Under Rule 12(b) ("Pl.'s 12(b) Opp'n"),
ECF No. 58 at 26-30.

Mr. Browder argues that many of these contacts should be
excluded from the jurisdictional calculus because they post-date
the alleged defamatory statements, are entirely unrelated to Mr.
Akhmetshin's claims, or the contacts were for the purpose of
influencing federal policy. First, the Court agrees that any
contacts with the District after Mr. Akhmetshin filed his
Complaint cannot form the basis for jurisdiction. *See Gather
Workspaces LLC v. Gathering Spot, LLC*, No. 19-2669, 2020 WL
6118439, at *4 (D.D.C. Oct. 16, 2020) ("[P]ost-complaint
contacts are not relevant to the personal jurisdiction
analysis."). Next, for the contacts establishing one of the plus
factors in (a)(4), the defendant's contacts with the District
"need not be related to the tortious act outside the forum that
causes the injury." *Lewy*, 723 F. Supp. 2d 123 (citing *Crane*, 814
F.2d at 763); *see Etchebarne-Bourdin v. Radice*, 982 A.2d 752,
763 (D.C. 2009) (holding that the claim must not arise out of
the "plus factors" in subsection (a)(4)). Finally, the D.C.
Court of Appeals, in the question certified to it, held that
government contacts are not excluded when determining whether a
defendant engages in a "persistent course of conduct" in the
District under subsection (a)(4). *See Akhmetshin*, 275 A.3d at
296. The court reasoned that nothing in the text of subsection

(a)(4) "suggests that 'persistent course of conduct' refers only to conduct not associated with the government" and the concerns underly the government contacts exception in other subsections—i.e., a defendant engaging with the federal government in D.C. have not "purposefully avail[ed] themselves of the privilege of conducting activities within D.C."—are sufficiently protected by the "constitutional prerequisite" of purposeful availment. *Id.* at 295 (internal citations omitted).

Examining Mr. Browder's pre-Complaint contacts with the District, the Court concludes that his contacts exceed "sporadic" visits to the District. Unlike in *Parsons v. Main*, 580 A.2d 1329 (D.C. 1990), where the court held that a defendant's two or three visits to the forum state over a ten-year period could not establish a "persistent course of conduct," Mr. Browder visited the District multiple times per year in the years leading up to this lawsuit. *See* Pl.'s 12(b) Opp'n, ECF No. 58 at 26–30. While the number of Mr. Browder's contacts with the District fall somewhere between the cases where courts have found a persistent course of conduct versus those that did not, most of Mr. Browder's contacts center around his work in foreign policy, establishing a connection with the District that surpasses isolated visits. *Compare Blumenthal v. Drudge*, 992 F. Supp. 44, 57 (D.D.C. 1998) (exercising personal jurisdiction under (a)(4) where defendant traveled to the

District to promote his gossip website, the website had significant interaction with District residents, and District residents provided the gossip for the website), *with McFarlane v. Esquire Mag.*, 74 F.3d 1296, 1300-01 (D.C. Cir. 1996) ("If 'regularly' and 'persistent' are to have any meaning, sale of two articles to District-based publications over a career in journalism cannot amount to . . . a 'persistent' course of conduct.").

For these reasons, the Court concludes that subsection (a)(4)'s "persistent course of conduct" requirement is met, and personal jurisdiction comports with D.C.'s long-arm statute.[10]

### 2. Exercising Specific Personal Jurisdiction Over Mr. Browder Does Not Comport with Due Process

Due Process is satisfied "when there are 'minimum contacts' between the defendant and the forum 'such that the maintenance of the suit does not offend the traditional notions of fair play and substantial justice.'" *United States v. Ferrara*, 54 F.3d 825, 828 (D.C. Cir. 1995) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). Plaintiff bears the burden of establishing a factual basis for personal jurisdiction over a defendant. *See N.Y. Zoological Soc'y*, 894 F.2d at 456.

---

[10] In view of this conclusion, Mr. Akhmetshin's request for jurisdictional discovery is **DENIED.**

Plaintiffs must allege specific acts connecting the defendant with the forum. *See Second Amend. Found*, 274 F.3d at 524.

### a. Minimum Contacts

A defendant's "minimum contacts" with the forum state must be "such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). This inquiry "focuses on the relationship among the defendant, the forum, and the litigation." *Keeton v. Hustler Mag., Inc.*, 465 U.S. 770, 775 (1984) (internal quotations omitted); *see also Walden v. Fiore*, 571 U.S. 277, 284 (2014) ("[T]he defendant's suit-related conduct must create a substantial connection with the forum State."). When asserting specific personal jurisdiction, it is not enough that the defendant has contacts with the forum state—the plaintiff's claims must "arise out of or relate to the defendant's contacts with the form." *Bristol-Myers Squibb Co. v. Superior Ct of Ca.*, 582 U.S. 255, 262, 264 (2017) ("When there is no such connection, specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State.").

Mr. Akhmetshin alleges that Mr. Browder has had multiple contacts with the District beginning in 2009, including providing fact testimony to the U.S. government, engaging lobbying and public relations firms, meeting with members of Congress and their staff, and attending NGO gatherings. *See*

Compl., ECF No. 1 ¶¶ 23, 59, 61. In response, Mr. Browder argues
that these contacts are insufficient for the Court to assert
personal jurisdiction over him because Mr. Akhmetshin's claims
in this suit do not arise out of or relate to the alleged
contacts. *See* Def.'s 12(b) Mot. to Dismiss, ECF No. 55 at 30-32.
Mr. Akhmetshin does not contest that Mr. Browder made the
allegedly defamatory statements outside the District. *See* Pl.'s
12(b) Opp'n, ECF No. 58 at 16-18. Instead, Mr. Akhmetshin puts
forward two theories for why the Court has personal
jurisdiction: (1) Under *Calder v. Jones*, 465 U.S. 783 (1984),
the Court has jurisdiction because Mr. Browder's intentional
tortious conduct caused him harm in the District, Pl.'s 12(b)
Opp'n, ECF No. 58 at 22-25; or, in the alternative, (2) Mr.
Akhmetshin's claims sufficiently relate to Mr. Browder's
contacts with the District because "the *motivation* behind [Mr.]
Browder's campaign of defamation was to defend [his previous]
lobbying efforts [in the District]." *Id.* at 26.

### i. *Calder's* "Effects Test"

First, Mr. Akhmetshin argues that under *Calder*, Mr.
Browder's "knowing and purposeful infliction of reputational
injury" on him, as a District of Columbia resident, sufficiently
"connects the defendant, the forum, and the litigation," *id.* at
22-23. In response, Mr. Browder contends that *Calder* is
distinguishable because his Tweets and statements were aimed at

a general audience, not the District. *See* Def.'s Reply Br. in
Support of Mot. to Dismiss Under Rule 12(b) ("Def.'s 12(b)
Reply"), ECF No. 61 at 11–12. In *Calder*, the Supreme Court held
that a California court had jurisdiction over out-of-state
defendants in a libel suit "because [] their intentional conduct
in Florida [was] calculated to cause injury to [the plaintiff]
in California." *Calder*, 465 U.S. at 791. The Court's analysis
focused on the facts surrounding the allegedly libelous news
story—the story was about a California resident whose television
career was centered in California, the defendants relied on
sources, including the plaintiff, located in California to write
the story, the newspaper was circulated in California more than
any other state, and the emotional distress and reputational
injuries were suffered in California. *Id.* at 788–89 (deducing
that California was "the focal point of both the story and of
the harm suffered"). The Court concluded the defendants'
allegedly tortious conduct was "expressly aimed" at California,
thus, defendants should have "reasonably anticipate[d] being
haled into court there to answer for the truth of the statements
made in their article." *Id.* at 789–90 (quoting *World-Wide
Volkswagen*, 444 U.S. at 297) (internal quotations omitted).

Thirty years after *Calder*, the Supreme Court emphasized
that "an injury is jurisdictionally relevant only insofar as it
shows that the defendant has formed a contact with the forum

state." *Walden*, 571 U.S. at 287 (highlighting that "*Calder* made clear that mere injury to a forum resident is not a sufficient connection to the forum"). Ultimately, to exercise personal jurisdiction under the *Calder* "effects test," courts have required a plaintiff to show: "(1) intentional actions (2) expressly aimed at the forum state (3) causing harm, the brunt of which is suffered-and the defendant knows is likely to be suffered-in the forum state." *Kline v. Williams*, No. 05-01102, 2006 WL 758459, *5 (D.D.C. Mar. 23, 2006) (quoting *Panavision Int'l v. Toeppen*, 141 F.3d 1316, 1318 (9th Cir. 1998)) (internal quotations omitted).

Assuming arguendo that the first and third prongs of this test are met, Mr. Akhmetshin has failed to meet his burden of establishing that Mr. Browder's tortious conduct was "expressly aimed" at the District. The allegedly defamatory statements were made outside of the District, and they predominately concern Mr. Akhmetshin's alleged attendance at a meeting that took place in New York City. *See* Ex. A, ECF No. 20-5; Ex. B, ECF No. 20-6; *see also* Pl.'s 12(b) Opp'n, ECF No. 58 at 22. Neither of the Tweets, nor the news articles attached to them, concern any conduct that took place in the District. *See* Ex. A, ECF No. 20-5; Ex. B, ECF No. 20-6. The same is true for Mr. Browder's quoted statements in Natasha Bertrand's Business Insider Article. *See* Ex. C, ECF No. 20-7. Moreover, unlike the defendants in *Calder* who reached

out to California sources for information to use in their
article, there is no evidence that Mr. Browder, who lives in the
United Kingdom, made any contact with the District in
cultivating, drafting, or being interviewed for the statements.
*Calder*, 465 U.S. at 788-89. The only hint at the District in any
of these statements is during Mr. Browder's CBS This Morning
interview, which occurred live in New York, where he states,
"[Natalia Veselnitskaya] then hires this guy Rinat Akhmetshin,
who is a—by all accounts, some kind of shady former Soviet spy,
current spy operator in Washington." Ex. D, Gottlieb Decl., ECF
No. 20-8. However, without more, the Court concludes that this
mention of the District merely connects the Plaintiff with the
District, which is not enough to exercise personal jurisdiction.
*See Walden*, 571 U.S. at 286 ("[I]t is insufficient to rely on .
. . the 'unilateral activity' of a plaintiff.")

      Even if Mr. Browder's motivation in making the statements
was to harm Mr. Akhmetshin's ability to work as a lobbyist in
the District, "the jurisdictional inquiry requires tangible
allegations relating [the claims] to defendant[']s[] contacts
with the forum." *Cengiz v. Salman*, No. 20-3009, 2022 WL
17475400, at *12 (D.D.C. Dec. 6, 2022) (internal quotation marks
omitted). Those tangible facts connecting Mr. Browder to the
forum, rather than just the Plaintiff, are precisely what is
missing here. The allegedly defamatory statements were posted to

online platforms, all with general audiences. *See* Pl.'s 12(b) Opp'n, ECF No. 58 at 16–18. None of the alleged facts suggest that the audience of the statements would be greater in the District than any other location. Rather, the alleged facts establish that each platform—Mr. Browder's Twitter account, Business Insider, and CBS This Morning—have an enormous, global audience. Compl., ECF No. 1 ¶¶ 68–70.

To the extent the allegedly defamatory statements are of more interest to individuals in the District, that is a reflection on individuals in the District and not an indication that Mr. Browder intentionally made contacts with the District such that he should expect to be haled into court here. *See Kline*, 2006 WL 758459, at *5 ("Mere accessibility of a web site posting from the District does not establish 'minimum contacts' with the forum."). Accordingly, the Court concludes that Mr. Akhmetshin's alleged injury in the District alone does not meet the due process clause's minimum contacts requirement.

**ii. Arise Out Of or Relate To**

Next, Mr. Akhmetshin argues that his claims sufficiently relate to Mr. Browder's other contacts with the District for the Court to exercise specific jurisdiction because Mr. Browder only defamed Mr. Akhmetshin since he "represented a threat to the achievements that [Mr.] Browder had made through his contacts with the District." Pl.'s 12(b) Opp'n, ECF No. 58 at 26. Mr.

Browder challenges the use of these contacts, *see supra* at 10;
to exercise personal jurisdiction over him, arguing that Mr.
Akhmetshin's claims are unrelated to those contacts and thus
could not have provided him with fair warning of a lawsuit.
Def.'s 12(b) Reply, ECF No. 61 at 10.

The "arise out of or relate to" requirement for specific
personal jurisdiction "ensures that a district court exercises
specific personal jurisdiction only over those foreign
defendants who had 'fair warning that a particular activity may
subject them'" to jurisdiction. *Bernhardt v. Islamic Republic of
Iran*, 47 F.4th 856, 864 (D.C. Cir. 2022) (quoting *Mwani v. bin
Laden*, 417 F.3d 1, 11 (D.C. Cir. 2005)). While the four
allegedly defamatory statements might be similar in subject
matter to issues Mr. Browder previously promoted while in the
District, the relevant question is whether he made sufficient
contacts with the District in making the four statements at
issue. As the Court has emphasized throughout this Memorandum
Opinion, the statements at issue were made outside of the
District, about conduct outside of the District. There is no
evidence that Mr. Browder contacted anyone in the District
regarding his making these statements. To the extent Mr.
Akhmetshin is urging the Court to exercise specific personal
jurisdiction based on Mr. Browder's motive to save his own
reputation in the District, the Court rejects this argument. Not

only does Mr. Akhmetshin fail to cite to any authority where a court exercises specific personal jurisdiction based on a defendant's reputation in that place, but as stated above, there are no tangible facts that Mr. Browder, or his statements, made actual contacts with the District to reach this goal. While "some relationships will support jurisdiction without a causal showing," *Bernhardt*, 47 F.4th at 864 (quoting *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1026 (2021), the Court concludes that Mr. Browder's other contacts with the District could not have given Mr. Browder fair warning that he could be haled into court here.[11]

### b. Fair Play or Substantial Justice

Even if there were the minimum contacts required by due process, exercising jurisdiction here would offend "our traditional conception of fair play and substantial justice." *World-Wide Volkswagen*, 444 U.S. at 292. When determining whether personal jurisdiction comports with fair play and substantial

---

[11] Mr. Browder also argues that his visits to the District for the purpose of influencing the federal government—his "government contacts"—should be exempt from the due process minimum contacts calculus. *See* Def.'s 12(b) Mot. to Dismiss, ECF No. 55 at 30–32. The Court must not determine whether it is appropriate to consider government contacts for due process because it concluded that Mr. Akhmetshin's claims do not arise from any of Mr. Browder's former government contacts, including his advocacy for the Magnitsky Act. Rather, Mr. Akhmetshin's claims arise out of Tweets that Mr. Browder sent from outside of the District that were about Mr. Akhmetshin's activity in New York. *See* Ex. A, ECF No. 20-5; Ex. B, ECF No. 20-6.

justice, courts consider five factors: (1) "the burden on the defendant"; (2) "the forum State's interest in adjudicating the dispute"; (3) "the plaintiff's interest in obtaining convenient and effective relief"; (4) "the interstate judicial system's interest in obtaining the most efficient resolution of controversies"; and (5) the "shared interest of the several states in furthering fundamental substantive social policies." *World-Wide Volkswagen*, 444 U.S. at 292.[12] First, adjudication of these claims in the District of Columbia would impose a significant burden on Mr. Browder, who is a citizen and resident of the United Kingdom. Moreover, he does not own any property or businesses in the District, and his statements giving rise to this action are wholly unrelated to the District. *See Manifold v. Wolf Coach, Inc.*, 231 F. Supp. 2d 58, 62–63 (D.D.C. 2002) (finding jurisdiction did not offend fair play and substantial justice where the defendant should have anticipated vans being used around the District where it negotiated contract directly with District-based news organization). Aside from his residence

---

[12] In briefing this issue, neither party addressed the application of these five factors. Arguing that he previously was able to expect that his District contacts would be exempt from a jurisdictional analysis, Mr. Browder focused on the D.C. Court of Appeals new holding regarding the government contacts exception and the "plus factors" under subsection (a)(4) of the D.C. long-arm statute. *See* Def.'s 12(b) Mot. to Dismiss, ECF No. 55 at 34–35. The Court concludes that this argument is misplaced and addresses the five factors established in *World-Wide Volkswagen*.

and reputational harm in the District, Mr. Akhmetshin points to
no specific social policies or interstate judicial system that
would implicate the remaining factors and weigh in favor of
having his case heard here in the District.

### B. Anti-SLAPP Act

Mr. Browder also filed a renewed Motion to Dismiss pursuant
to the Anti-SLAPP Act. *See* Def.'s Special Mot. to Dismiss, ECF
No. 56. Relying on D.C. Circuit precedent that a federal court
must apply the Federal Rules [governing pre-trial dismissal]
instead of the D.C. Anti-SLAPP Act's special motion to dismiss
provision," *Abbas v. Foreign Policy Grp.*, 783 F.3d 1328, 1333
(D.C. Cir. 2015); the Court previously denied this motion. *See*
*Akhmetshin I*, 407 F. Supp. 3d at 18 n.9 (citing *Abbas*, 783 F.3d
at 1333). Mr. Browder's renewed motion contends that the D.C.
Court of Appeals' holding in *American Studies*, 259 A.3d at 750,
undermines this Circuit's precedent and requires the Court to
grant his § 16-5502 motion. Def.'s Special Mot. to Dismiss, ECF
No. 56 at 9-14.

In *Abbas*, the D.C. Circuit reviewed the D.C. Anti-SLAPP Act
under the standard from *Shady Grove Orthopedic Associates, P.A.*
*v. Allstate Insurance Co.*, 559 U.S. 393, 398-99 (2010), to
determine whether a federal court exercising diversity
jurisdiction should apply this state rule. *Abbas*, 783 F.3d at
1333-34. The court concluded: "Federal Rules of Civil Procedure

12 and 56 'answer the same question' about the circumstances under which a court must dismiss a case before trial. And those Federal Rules answer that question differently: They do not require a plaintiff to show a likelihood of success on the merits." *Id.* Given the conflicting standards, the court held that a federal court exercising diversity jurisdiction may not apply the D.C. Anti-SLAPP Act's special motion to dismiss provision. *Id.* at 1333, 1337. After the D.C. Court of Appeals defined the "likelihood of success" standard—likening it to the standard for a motion for summary judgment standard in Federal Rule 56, *see Competitive Enterprise Institute*, 150 A.3d at 1238—the D.C. Circuit re-affirmed *Abbas. See Tah v. Glob. Witness Publ'g*, 991 F.3d 231 (D.C. Cir. 2021).

Mr. Browder argues that *American Studies* abrogates the D.C. Circuit's precedent that D.C.'s Anti-SLAPP Act may not be applied in federal court. *See* Def.'s Special Mot. to Dismiss, ECF No. 56 at 9-14. According to Mr. Browder, *American Studies* held that § 16-5502 applies to motions to dismiss under Federal Rule of Civil Procedure 12, and therefore, the "dismissal of a 'claim arising from an act in furtherance of the right of advocacy on issues of public interest' is [ ] 'under' § 16-5502 as a matter of D.C. law regardless of the pleading standard that resulted in that dismissal." Def.'s Reply Br. in Support of Special Mot. to Dismiss ("Def.'s Special Mot. Reply Br."), ECF

No. 62 at 11. Mr. Browder asserts that this holding separates the fee-shifting provision in § 16-5504 from § 16-5502(b)-(c)'s heightened procedural requirements, allowing federal courts sitting in diversity jurisdiction to apply § 16-5502 and the fee-shifting provision in § 16-5504.[13] *See* Def.'s Special Mot. to Dismiss, ECF No. 56 at 6-7, 10.

In response, Mr. Akhmetshin argues that *Abbas* and *Tah* continue to be binding precedent because the Federal Rules and the special motion to dismiss provision in § 16-5502 continue to answer the same question—when a case can be dismissed before trial—in conflicting ways. *See* Pl.'s Opp'n to Def.'s Mot. to Dismiss Compl. Under D.C. Code § 16-5502 ("Pl.'s Opp'n to Def.'s Special Mot. to Dismiss"), ECF No. 59 at 10-11. The Court agrees and concludes that Mr. Browder's interpretation of *American Studies* is mistaken.

In *American Studies*, the D.C. Court of Appeals held that "where the court grants a 12(b)(6) motion because no relief can be granted on a claim as a matter of law, the plaintiff cannot show a likelihood of success on the merits of that claim for the

---

[13] Mr. Browder's arguments contain several layers, all of which are only relevant if the Court determines that *American Studies* abrogates *Abbas* and *Tah*. Because the Court concludes that it does not, the Court does not reach the issues of whether § 16-5502 would still conflict with a Federal Rule if the fee shifting provision was independent or whether a Rule 12(b)(2) dismissal is a dismissal "on the merits." *See* Def.'s Special Mot. to Dismiss, ECF No. 56 at 14-19.

purposes of the anti-SLAPP motion." *Am. Studies*, 259 A.3d at 740-41 (acknowledging the additional hurdle that § 16-5502 places on plaintiffs to get to trial). Unlike Mr. Browder suggests, *American Studies* does not rid § 16-5502 of its heightened procedural requirement nor does it allow a court to award attorney's fees under § 16-5504 without finding that a plaintiff has failed to establish that his claims are "likely to succeed on the merits." *Id.*[14] Rather, it advises courts handling 12(b)(6) motions and special motions under § 16-5502 that a plaintiff who failed to state a claim for relief under the 12(b)(6) standard clearly could not meet the more stringent requirement of demonstrating that his claim is likely to succeed on the merits. *Id.* Both requirements under § 16-5502 must still be met for the special motion to be granted. *Id.*

*American Studies* does not change the fact that the Anti-SLAPP Act "conflicts with the Federal Rules by setting up an additional hurdle a plaintiff must jump over to get to trial." *Abbas*, 783 F.3d at 1334. Accordingly, in contrast to Mr. Browder's contention, the Court concludes that *American Studies*

---

[14] To further support his position, Mr. Browder points to the D.C. Circuit's commentary in *Abbas*: "The [D.C. Anti-SLAPP] Act does not purport to make attorney's fees available to parties who obtain dismissal by other means, such as under Federal Rule 12(b)(6)." To the extent Mr. Browder is arguing that *American Studies* does make attorney's fees available to parties who obtain dismissal under the Federal Rules, the Court concludes there is no such holding in *American Studies*.

does not render *Abbas* and *Tah* abrogated law and declines to stray from the precedent they set. Mr. Browder's special motion to dismiss is denied.

## V.  Conclusion

For the foregoing reasons, the Court **GRANTS** Mr. Browder's Motion to Dismiss for Lack of Personal Jurisdiction Under Rule 12(b)(2), ECF No. 55; **DENIES** Mr. Browder's Motion to Dismiss Under the Anti-SLAPP Act, ECF No. 56; and **DENIES** Mr. Akhmetshin's request for jurisdictional discovery. The Court **DISMISSES** this case **WITHOUT PREJUDICE.** A separate Order accompanies this Memorandum Opinion.

**SO ORDERED.**

Signed:    **Emmet G. Sullivan**
           **United States District Judge**
           **December 23, 2024**